[No. 2085]

## THE STATE OF NEVADA, EX REL. G. H. BEEBE, PETITIONER, v. WILLIAM McMILLAN, TREASURER OF THE STATE OF NEVADA, RESPONDENT.

1. STATE GOVERNMENT — PAYMENT FROM PUBLIC FUNDS — STATE INSURANCE FUND—"STATE TREASURY."

The constitution, art. 5, sec. 21, constitutes the governor, secretary of state, and attorney-general a board of examiners to examine claims against the state, except the compensation of officers fixed by law. Article 4, section 19, provides that no money shall be drawn from the state treasury except to meet appropriations made by law. Article 5, section 22, provides that the state treasurer and state controller shall perform duties prescribed by law. Rev. Laws, 4459, requires all claims against the state, provided for by appropriation, but not liquidated, to be presented to the board of examiners for approval, and that the controller shall not allow them unless so approved. Section 4157 defines the general duties of the state controller, section 4158 requires him to audit all claims against the state for which appropriation has been made, of which the amount has not been definitely fixed by law, and which have been examined and approved by the board, and to allow claims as provided by law, and section 4159 requires him to draw all warrants upon the treasury and to account therefor. The act relating to the compensation of workmen (Stats. 1913, c. 111), receiving injuries in the course of their employment resulting in death, creates an industrial insurance commission, composed of the governor, state mining inspector, attorney-general and two others named by them, and a state insurance fund derived from premiums paid by such employers as accept the terms of the act, and by section 24 provides that all premiums shall be paid to the state treasurer, and by section 40 that the state shall not be liable for any compensation under the act except from such funds. *Held*, that the "state treasury" did not include the state insurance fund, which was a special fund given to the treasurer in trust, as distinguished from the general taxes and revenues of the state, and that the requirement for presentation of claims to the board of examiners and the issuance of warrants by the controller did not apply.

ORIGINAL PROCEEDING for writ of mandate by the State of Nevada, on the relation of G. H. Beebe, against

William McMillan, as Treasurer of the State of Nevada. **Demurrer overruled,** with leave to answer.

The facts sufficiently appear in the opinion.

*William Forman,* for Petitioner.

*Geo. B. Thatcher,* Attorney-General, for Respondent.

By the Court, TALBOT, C. J.:

Relator applies for a writ of mandate commanding the state treasurer to pay out of the "state insurance fund" a claim which has not been approved by the board of examiners. It is agreed that the case be considered as standing upon demurrer to the petition, and the question argued, and which the court is requested to determine, is whether the state treasurer may properly pay claims against this fund without the approval of the board of examiners and the warrant of the state controller. The respondent has taken the safer course by refusing to pay before an adjudication of the statute is obtained.

The legislature at its last session passed an act entitled: "An act relating to the compensation of injured workmen in the industries of this state and the compensation to their dependents where such injuries result in death, creating an industrial insurance commission, providing for the creation and disbursement of funds for the compensation and care of workmen injured in the course of employment, and defining and regulating the liability of employers to their employees; and repealing all acts and parts of acts in conflict with this act." (Stats. 1913, c. 111.) It provides for the "Nevada Industrial Commission," to be composed of the governor, state mining inspector, attorney-general, and two others to be selected by the three named, that a majority of these shall constitute a quorum for the transaction of the business of the commission, and for a state insurance fund, to be derived from premiums to be paid by employers, based on percentages of monthly payrolls, in cases where notice of rejection of the terms of the act is not served by the employer or employee.

Section 24 provides that all premiums designated in the act shall be paid to the state treasurer, and shall constitute the state insurance fund for the benefit of employees and their dependents.

Section 40 provides that the state shall not be liable for the payment of any compensation under the act except from the state insurance fund, to be derived from the payment of these premiums, and section 41 that the expenses of administration shall not exceed ten per cent of the amount of the premiums paid into this fund.

Differently from the provisions generally existing in other states, our constitution provides that the governor, secretary of state and attorney-general shall "constitute a board of examiners with power to examine all claims against the state, except salaries or compensation of officers fixed by law." (Art. 5, sec. 21.) The organic act also provides, at section 19, article 4, that no money shall be drawn from the state treasury but in consequence of appropriations made by law, and at section 22, article 5, that the secretary of state, state treasurer, and state controller shall perform such other duties as may be prescribed by law.

Section 4459 of the Revised Laws provides that: "All claims against the state for service or advances, for payment of which an appropriation has been made by law, and which have been by law authorized, but of which the amount has not been liquidated and fixed, must be presented to the board of examiners in the form of an account or petition, and in such manner as said board shall prescribe by their rules. * * * The controller shall not allow or draw his warrant for any claim of the class described in this section, which shall not have been approved by said board, or a greater amount than allowed by said board, except when said claim shall not have been acted upon by said board within thirty days prior to its presentation."

Section 4157 provides: "He shall keep and state all accounts between the State of Nevada and the United States, or any state or territory, or any individual,

corporation, or public officer of this state, indebted to the state, or intrusted with the collection, disbursement, or management of any moneys, funds or interests, arising therefrom, belonging to the state, of every character and description whatsoever, where the same are derivable from or payable into the state treasury. He shall examine and settle the accounts of all county treasurers, and other collectors and receivers of all state revenue, taxes, tolls, and incomes, levied or collected by any act of the legislature and payable into the state treasury, and certify the amount or balance to the state treasurer. He shall keep fair, clear, distinct, and separate accounts of all the revenues and incomes of the state, and also, all the expenditures, disbursements, and investments thereof, showing the particulars of every expenditure, disbursement, and investment."

Section 4158 enacts: "He shall audit all claims against the state, for the payment of which an appropriation has been made, but of which the amount has not been definitely fixed by law, and which shall have been examined and passed upon by the board of examiners, or which shall have been presented to said board, and not examined and passed upon by them within thirty days from their presentation; and he shall allow of said last-mentioned claims (not passed upon by the board of examiners within said thirty days after presentation), the whole, or such portion thereof as he shall deem just and legal, and of claims examined and passed upon by the board of examiners, such an amount as he shall decree just and legal, not exceeding the amount allowed by said board. And no claim for services rendered, or advances made to the state or any officer thereof, shall be audited or allowed unless such services or advancement shall have been specially authorized by law, and an appropriation made for its payment. For the purpose of satisfying himself of the justness and legality of any claim, he shall be allowed to examine witnesses under oath and to receive and consider documentary evidence in addition to that furnished him by the board of examiners. He shall draw warrants on the treasurer for such

amounts as he shall allow of claims of the character above described, and also for all claims of which the amount has been definitely fixed by law, and for the payment of which an appropriation shall have been made."

Section 4159 is as follows: "He shall audit all warrants upon the treasurer for money, and each warrant shall express, in the body thereof, the particular fund out of which the same is to be paid, and no warrant shall be drawn upon the treasury except there be an unexhausted specific appropriation, by law, to meet the same. The controller shall keep an account of all warrants by him drawn on the treasury, and a separate account under the head of each specific appropriation, in such form and manner as at all times to show the unexpended balance of each appropriation."

Is the state insurance fund, as so derived from premiums, identical with the state treasury, and are the demands against it claims against the state within the meaning of the constitutional and statutory provisions regarding approval by the board of examiners and the drawing of warrants by the state controller? If action by this board and official were required, much of the detail work performed by the special officers and clerical force of the industrial commission would have to be delayed until it could be considered by the board, which meets bimonthly, and has many other duties to perform, and the further question would arise whether the payment of such claims would have to be deferred until an appropriation, the amount of which would not be easy to determine, could be made by the legislature. Under the law as indicated it is evident that all claims against the state treasury must be presented to the board of examiners and to the state controller before they can be paid out of that exchequer. But if the fund be regarded as a special one, placed in the hands of the state treasurer for safe keeping, in trust for employees injured and the dependents of employees who are killed, and as separate from the state treasury, presentation of claims to, or action by, the board of examiners or the

controller is not required by these general laws relating
to claims against the state treasury, or otherwise, for the
Nevada industrial commission act does not provide that
claims against the state industrial insurance fund shall
be presented to the board of examiners or to the state
controller.

The fact that the state treasurer is made the custodian
of the fund does not necessarily make it a part of the
state treasury. The provision in the act that $2,000
should be paid to the Nevada Industrial Insurance Com-
mission out of any moneys in the state treasury not
otherwise appropriated, and that within six months after
the receipt of that sum the commission should, out of
the premiums received by it from employers, repay that
amount to the state treasury, may be considered as indi-
cating that the legislature intended that the commission
should draw that sum as a loan from the state treasury,
and thereafter disburse it without approval by the board
of examiners or the state controller, and inferentially
that there should be a fund separate from the state
treasury, and that the commission should likewise dis-
burse any moneys in that fund without action by the
board of examiners or the state controller.

Any act of the legislature requiring employers to
contribute to the state treasury for the support of the
state government a percentage on the monthly payrolls,
on the basis on which premiums are paid into the state
insurance fund, would be unconstitutional because not
uniform taxation. (Art. 4, sec. 20.) These premiums
are not paid for the purposes for which taxes and
revenues are usually paid into the state treasury, and
could not be used or made available for the payment of
warrants for the ordinary expenses of the state govern-
ment which are payable out of the state treasury. The
state insurance fund being derived only from the pay-
ment of premiums by employers who do not object to
coming under the terms of the compensation act, and
being provided for the special and humane purpose of
compensating employees who are maimed or injured,

and the widows and orphans of those who are killed, may be distinguished from the state treasury, which is provided for the payment of the general expenses of the state government, and which is supplied under compulsory laws and provisions of the constitution requiring a uniform system of taxation.

The state insurance fund should be regarded as separate from the state treasury, as are county and city funds, which are derived under general or special acts of the legislature. The "state treasury" has a well-understood meaning, which does not include such a special fund as this one, providing for injured employes and their dependents, and we conclude that the requirements for presentation of claims against the state treasury to the board of examiners and the controller do not apply to the state insurance fund.

The demurrer, upon the ground that the approval of the board of examiners and the warrant of the controller are required before claims may be paid from that fund, is overruled. Respondent may answer within ten days if he desires.