John C. MORAN et al., Appellees,

v.

STATE of Oklahoma ex rel. Larry DERRYBERRY, Attorney General,
Appellant.

No. 47716.

Supreme Court of Oklahoma.

May 2, 1975.

Stipe, Gossett, Stipe & Harper by Gene Stipe, John Estes and Carl Hughes, Oklahoma City, for appellees.

Larry Derryberry, Atty. Gen., James R. Barnett, Asst. Atty. Gen., William W. Gorden, Legal Intern, for appellant.

John Christopher Sturm, Commissioner, Edmund, Sam Hill and Mary Elizabeth Cox, Oklahoma City, for State Ins. Fund, amicus curiae.

DAVISON, Justice:

State of Oklahoma, ex rel. Larry Derryberry, Attorney General (Appellant), prosecutes this appeal from a judgment enjoining the State Insurance Fund Commissioner and the Board of Managers of the State Insurance Fund from proceeding, as direct-ed by 85 O.S.Supp.1974, §§ 152 and 153 (Senate Bill No. 726, Session Laws 1974), to liquidate assets of the State Insurance Fund to the extent of $4,000,000.00 and then deposit the proceeds in the Fund's account, to be expended only upon appropriation by the Legislature.

This action was instituted in the lowei court by John C. Moran, William R. Allen, Anderson Development Company, Inc., and Lawrence Drilling Company, Inc., (Appellees), as employers in business activities subject to the Workmen's Compensation Law and insurable by the "State Insurance Fund", and currently policyholders with the State Insurance Fund. Their action was against the State Insurance Fund Commissioner (Executive Manager of the Fund) and the Board of Managers of the Fund, to enjoin the above mentioned liquidation of assets and the subjection thereof to Legislative appropriation. The Appellant, State of Oklahoma, ex rel. Larry Derryberry, Attorney General, intervened therein under authority of 12 O.S.1971, § 1653, permitting such entry when a statute is alleged to be unconstitutional. The original defendants are not parties to this appeal. However, the State Insurance Fund by its Commissioner and attorneys appear Amicus Curiae.

The Journal Entry states the judgment was rendered when plaintiffs' (Appellees') Motion for Summary Judgment was sustained. The Journal Entry of Judgment further recites:

"That based upon the pleadings of the parties on file herein, the evidence and testimony adduced at this and prior hearings, and, the announcements of all counsels of record that there is no further evidence or testimony to be offered, the court finds that there are no facts at issue or yet to be determined."

Included in the above enumerated factors was the evidence and testimony produced by Appellees at the hearing relative to issuance of a temporary restraining order. The Appellant produced no witnesses or evidence.

The trial court found and adjudged there "are no excess, surplus funds in the trust funds of the State Insurance Fund," and further that said 85 O.S.Supp.1974, §§ 152 and 153, and a companion appropriation bill (Sec. 4, of Senate Bill No. 434), infra, were unconstitutional and void on several grounds, including Art. 2, § 15, Oklahoma Constitution forbidding the passage of any law impairing the obligation of contracts.

The general proposition in this appeal concerns the authority of the Legislature to take and then appropriate, for other than Workmen's Compensation purposes, the funds or alleged surplus funds of the State Insurance Fund.

In 1974 the Legislature enacted 85 O.S. Supp.1974, §§ 152 and 153, above mentioned.

§ 152 stated the purpose of the Act was to provide for disposition and use of "existing surplus funds of the State Insurance Fund in excess of the reserves and surplus authorized to be maintained by law."

§ 153 directed the State Insurance Fund Commissioner with the approval of the Board of Managers of the State Insurance Fund to liquidate assets in the State Insurance Fund Workmen's Compensation Account sufficient to cause $4,000,000.00 to be transferred to the State Insurance Fund, and such funds to be expended only upon appropriation by the Legislature.

§ 4, of Senate Bill No. 434, Oklahoma Session Laws, 1974, appropriated $4,000,-000.00 to the State Board of Education, "from any monies in the State Insurance Fund" for the support of the public school activities.

The State Insurance Fund is an entity first created by an Act of the Legislature in 1933 (Laws 1933, Chap. 28, p. 58). The Act of 1933, with intervening amendments and some repealed sections, now appears in our statutes as 85 O.S.1971, §§ 1 to 151, except as § 131 was amended in 1972 to permit expansion of insurance coverage to employment subject to the Longshoremen's and Harbor Workers' Compensation Act. The Fund was created during the Great Depression to satisfy the need for Workmen's Compensation insurance for companies unable to procure coverage from private insurance companies and for employers in high risk industries.

We are confronted with the proposition of, the status of the State Insurance Fund, the legal nature of its funds, including reserve funds, and the right of the State, acting through the Legislature, to take and use these funds.

Title 85 O.S.1971, § 131, provides that the Fund shall be administered *"without liability on the part of the State* beyond the amount of said Fund" (Emphasis added); that it shall be a Revolving Fund consisting of premiums received, all property and securities acquired through use of its moneys, and all interest earned upon its moneys; and that "Said Fund shall be fairly competitive with other insurance carriers and it is the intent of the Legislature that said Fund shall become neither more nor less than self-supporting."

§ 134 thereof provides in part that the Fund shall have power and authority to enter into contracts of insurance within prescribed limits; to reinsure any risk or any part thereof; "To produce a *reasonable* surplus to cover *catastrophe hazard."* (Emphasis added).

§ 137 thereof provides in part, that ten (10%) per centum of the premiums shall be set aside for the creation of a surplus until it amounts to $250,000.00, and thereafter five (5%) per centum of the premiums until in the judgment of the State Insurance Board "such surplus shall be sufficiently large to cover the catastrophe hazard, *and all other unanticipated losses."* (Emphasis added), and further that "Reserves shall be set up and maintained adequate to meet *anticipated* losses and to *carry all claims and policies to maturity,* which reserves shall be computed in accordance with such rules as approved by the State Insurance Board." (Emphasis added).

The "State Insurance Board" mentioned above is now the State Board for Property

and Casualty Rates. (36 O.S.1971, §§ 107, 332). It is a part of the Insurance Department of the State of Oklahoma. (36 O.S.1971, § 301).

In connection with § 137, we note that in the corresponding section in the 1933 Act (§ 7) supra, it was provided that the ten (10%) per centum portion of the premiums collected should initially be set aside for repayment of the appropriation made by State out of the General Revenue Fund for the purpose of putting the State Insurance Fund Act into operation. This has reference to a $25,000.00 appropriation provided in the original 1933 Act (§ 22), supra. The only evidence in the record before us is that this appropriation was never paid or set over to the State Insurance Fund. It appears to be agreed, or conceded, that no State appropriation has ever been used by the State Insurance Fund.

Under the provisions of 85 O.S.1971, § 149, the State and all its departments are required to insure against liability for compensation with the State Insurance Fund, and all municipal corporations, including counties, cities, towns and townships, may insure with the Fund, unless rejected by the Fund, or any county, city, town or township may carry their own insurance.

At the hearing on the temporary restraining order all of the testimony was to the effect that the money reserves of the State Insurance Fund were not excessive and were in fact considerably below a safe margin when considered in connection with those of other similar State insurance funds.

The evidence supplied by Appellees (there was no contra testimony) reflected a premium income for the previous year (1973) of close to $6,000,000.00, with a pay-out of $1.04 for each $1.00 of premium income; that total reserves for losses were in the area of $8,000,000.00, to cover about 3000 open claims then pending, reserves for catastrophe losses, Longshoremen and unreported claims, and policyholders' liability reserve for about 1700 policies outstanding. In addition it was shown there was an expense reserve of about $650,000.-00 required annually to operate the State Insurance Fund. It was the opinion of the State Insurance Fund Commissioner and of an expert consulting actuary in the field of Workmen's Compensation that the reserves were excessively low and inadequate; that the reserves, percentage-wise, were clearly below those maintained by the sixteen (16) other States having similar insurance funds; that the nature of the business of many of the Fund's policyholders, being high risk type or persons the private insurers would not accept, made reserve fund formulas used by private insurers not applicable in determining the amount of the Fund's reserves; that the 1972 inclusion of coverage Longshoremen and Harbor Workers was a recognized potential for large claims and expenditures; and that, considering all of the circumstances, the existing reserves should be increased by at least $4,000,000.00 or more.

■ In this connection, the Appellant contends that the practice of the State Insurance Fund in making refunds to policyholders (safety refunds) shows the Fund is making a "profit" and is evidence of a surplus. The record reflects that this is not an isolated situation, but is practiced generally in writing workmen's compensation, and is considered good practice by insurers. However, in view of our conclusions in determining the legal status of funds of the State Insurance Fund, the contention has no merit.

In view of the language in the statutes (supra), permitting considerable discretion in determining the amount of reserve funds, the fact that the reserve funds are the only source for paying claims (the State not being liable), and in the light of the undisputed evidence, we conclude that the trial court's finding of no "excess, surplus funds" in the funds of the State Insurance Fund is more than amply supported by the record.

This brings us to the matter of the legal status of the funds of the State Insurance Fund. The Appellant contends the funds

are State monies, but admits this is a minority view.

In State v. Bone, Okl., 344 P.2d 562, we held the State Insurance Fund, as an agency or instrumentality of the State, did not have the immunity of the State from suit, and could be sued and held liable for damages because of negligence of its employee in operating a motor vehicle. Therein we stated at page 568:

"* * * * Under no circumstances can the general funds of the State be reached in order to satisfy an obligation of the Fund. Independent control exists in the Fund to operate and maintain an insurance company in the same manner as may be done by any privately owned insurance company. These factors permit it (the Fund) to be regarded as an independent business enterprise or entity."

And on page 569:

"* * * * we now hold that the State Insurance Fund is a business enterprise as distinguished from purely governmental activities, and tort liability attaches and may be adjudicated pursuant to the consent statute, Sec. 133, 85 O.S.1951, supra. In creating and undertaking the operation of the State Insurance Fund, it is reasonable to think that the same responsibilities were intended to be assumed as ordinary insurance companies are obliged to assume."

■ These statements i. e., "Independent Control," and "operate and maintain in the same manner as privately owned insurance company," and "independent business," and "a business enterprise as distinguished from purely governmental activities," when joined with the legislative injunction "that said Fund shall become neither more nor less than self-supporting". (§ 131, supra), compel the conclusion that the Legislature did not intend for the State to gain a pecuniary profit from the operation, nor to gain by reason of an unexpected "windfall" in the nature of an alleged surplus or excess reserve, at the expense of the premium-paying employers or the employee beneficiaries, in a declared non-profit and non-loss insurance activity. That such is the clear majority view is shown by the authorities and decisions.

There is no question that should the State Insurance Fund become insolvent or fail to pay a workmen's compensation award, the employers insured by the Fund would be called upon to pay the award according to its terms. Atlas Wiring Co. v. Dorchester, 168 Okl. 337, 32 P.2d 913, and Rucks-Brandt Const. Corporation v. Silver, 194 Okl. 324, 151 P.2d 399. It is plain the insured employer is interested in seeing the Fund maintains reserves sufficient to pay any claims. It is also clear the employees of such employer have an interest in the maintenance of the reserves.

In Appleman, Insurance Law and Practice, Vol. 7A, § 4592, p. 190, "State Insurance Funds" it is stated:

"The purpose of a compensation act is to provide compensation for workmen injured in occupations defined by the act, and the funds created by the act, together with the revenues by which they are sustained, are trust funds devoted to the special purposes designated by the act."

And at page 192, as follows:

"The fund, itself, is not synonymous with the state, and claims against the fund are not claims against the state, the fund not being considered a state fund."

Also in Appleman, Vol. 7A, § 4594, pages 202, 203, "State Insurance Funds—Payment Out of Funds" it is stated:

"The Industrial Accident Board, Compensation Commission, or whatever department stands in that stead, occupies a position of trust in relation to every person who is entitled to receive benefits from the funds, of which the Board is made trustee. The revenues received from the contributions of employers are a trust fund in the sense that a moral and legal obligation is imposed upon the state to use the revenues for the declared purposes for which they are collected."

In 100 C.J.S. Workmen's Compensation § 357b, page 40, relative to State Funds, we find the following:

"* * * * The fund is a public fund in the sense of being administered by a public body, and its character as a public fund is indicated by a statute providing that industrial insurance premiums shall be paid into the state treasury for the accident and medical aid funds; but it is not public money in the sense of being money of the state to be used for, and on behalf of, the state for a state expenditure."

It appears from the decision in Chez v. Industrial Commission of Utah, 90 Utah 447, 62 P.2d 549, 108 A.L.R. 365, that Utah had created a State Insurance Fund very similar to that of Oklahoma. In that case the determination of the rights of the parties depended on whether a debt or obligation owing to the Fund was an obligation or liability to the State. The Court held that a debt owing the Fund was not an obligation due the State, and in doing so determined the status or nature of the funds (premiums) received from employers, stating (62 P.2d p. 550), "The employer really pools his premiums in the State Fund to create a fund for the payment of an obligation for which it is liable. It is a common fund belonging to the participating employers. It is therefore not derived from anything owing to the state nor paid out on behalf of any state obligation," and at page 551, "The fund is publicly administered, but its debtors are not debtors to the state. It belongs, not to the state, but to the contributing employers for their mutual benefit." The court (p. 551) concluded that the State Insurance Fund, "while a public fund in the sense of being administered by a public body, is not public money in the sense that it is money of the state to be used for and on behalf of the state for a state expenditure * * *."

In State v. Yelle, 174 Wash. 547, 25 P.2d 569, 28 P.2d 1119, the State, as a part of its Workmen's Compensation Act, created and established a fund known as the "accident fund," and industries engaged in extrahazardous work were required to pay into this fund certain premiums, to provide compensation for injured workmen. The fund was to be "neither more nor less than self-supporting." The Legislature inserted in a general appropriation act a provision appropriating "From the Accident Fund" $1,000.00 for the relief of a named person in full settlement of his claim for injuries. The court ruled the appropriation invalid, stating, "These funds are therefore trust funds drawn from particular sources and devoted to special purposes. By the act itself the fund is impressed with a trust." The Court further held at 25 P.2d page 570:

"* * * * These funds are therefore not subject to appropriation by the Legislature for purposes other than those contemplated by the act *nor by methods that run counter to the effective operation of the act.*" (Emphasis added)

The situation is the same in Oklahoma. Our Statute, 85 O.S.1971, § 131(b) also specifies the uses the funds held by the State Insurance Fund shall be put to, as follows:

"Said Fund shall be applicable to the payment of losses sustained on account of insurance and to the payment of expenses in the manner provided in this Act."

Other decisions supporting the view that such funds are trust funds are: State v. Padgett, 54 N.D. 211, 209 N.W. 388, 391 ("The claims against the fund are not claims against the state, and the fund itself is not a state fund."); Senske v. Fairmont & Waseca Canning Co., 232 Minn. 350, 45 N.W.2d 640, 646, ("It is a fund which belongs to the industry, in which the state has no interest other than its proper administration."); State v. Olson, 43 N.D. 619, 175 N.W. 714, 717 ("not a state fund,") State v. Musgrave, 84 Idaho 77, 370 P.2d 778, 782 ("The money in the fund does not belong to the state,"); State v. McMillan, 36 Nev. 383, 136 P. 108, 110 (premiums could not be used or made available for payment of ordinary expenses

of state government.); McArthur v. Smallwood, 225 Ark. 328, 281 S.W.2d 428 (are trust funds for workmen's compensation purposes, page 432.)

It is our conclusion the funds of the State Insurance Fund are not State funds and do not belong to the State, that such funds are trust funds for the benefit of employers and employees, and are not available for the general or other purposes of the State, nor are they subject to appropriation by the Legislature for purposes other than those contemplated by the State Insurance Fund Act.

This brings us to the matter of the constitutionality of 85 O.S.Supp.1974, §§ 152, 153, and Senate Bill 434, § 4, Session Laws 1974, supra. There is no question about this, the legislative acts are unconstitutional.

Pursuant to the provisions of 85 O.S. 1971, § 148, every person, firm or corporation insuring in the "State Insurance Fund" shall receive from the State Insurance Fund "a contract or policy of insurance," for which these parties pay a premium to the Fund. The accumulated premiums, and property and securities acquired by use of such moneys, and interest earned therefrom are a "Revolving Fund," to be used to pay insurance losses and to pay expenses as provided in the Act. (§ 131). We have held (supra) that this fund is a trust fund for the benefit of insured employers and for their employees. The employers had a vested legal right, when they entered into the insurance contracts with the Fund and paid the premiums, to rely upon this trust being maintained and administered in accordance with the State Insurance Fund Act, supra, and the law applicable thereto.

In Baker v. Tulsa Building & Loan Ass'n, 179 Okl. 432, 66 P.2d 45, 46, we' stated the well established rule of law as follows:

"The existing statutes and the settled law of the land at the time a contract is made become a part of it and must be read into it."

Therein we further stated:

"A 'vested right' is the power to do certain actions or possess certain things lawfully, and is substantially a property right, and may be created either by common law, by statute, or by contract. And when it has once been created, and has become absolute, it is protected from the invasion of the Legislature by those provisions in the Constitution which apply to such rights."

Article 2, § 15, Constitution of Oklahoma, provides that no law impairing the obligation of contracts shall ever be passed.

The 1974 legislative laws, 85 O.S.Supp. 1974, §§ 152, 153, and § 4, of Senate Bill 434, Session Laws 19741 do impair the insurance contracts and rights of Appellees thereunder, and are unconstitutional and void.

Judgment of Trial Court is affirmed.

All Justices concur.