Mr. Glenn W. Adams Manager, State Compensation Insurance Fund Centennial Building 1313 Sherman Street Denver, Colorado 80203
Dear Mr. Adams:
QUESTION PRESENTED AND CONCLUSION
In your memorandum dated April 18, 1977, you've asked for an opinion as to:
Whether it is appropriate for the general assembly to appropriate funds from the state compensation insurance fund for funding of the vocational rehabilitation officer of the Division of Labor whose duties are not part of the overhead costs of the state compensation insurance fund?
My conclusion is "no."
ANALYSIS
In response to your question, I have prepared the following opinion for your use and consideration.
The proposed Long Appropriations Bill 581, page 67, indicates that funding for the vocational rehabilitation officer of the Division of Labor is based on a 45/55 (gf/cf) split. The footnote on page 143, line 6, of the Long Bill Narrative states that thirteen thousand one hundred and thirty dollars ($13,130) shall be from the state compensation insurance fund.
As you indicated in your memorandum, the proposed appropriation may be in conflict with C.R.S. 1973, 8-54-106, which states:
 8-54-106. State compensation fund a continuing fund sources - applicability. The state compensation insurance fund shall be a continuing fund and shall consist of all premiums received and paid into said fund for compensation insurance, all property and securities acquired by and through the use of moneys belonging to said fund and deposited or invested as provided in section 8-54-122. Said fund shall be applicable to the payment of the salaries of the employees of the fund and to its other operating expenses and to the payment of losses sustained or liabilities incurred under the contracts or policies of insurance issued by said state compensation insurance fund in accordance with the provisions of articles 40 to 54 of this title. It is hereby declared that it was and is the purpose and intent of this section that the operating expenses mentioned in this section shall include, among other items, such reasonable monthly rentals for quarters furnished by the state for use in the administration of said fund as shall from time to time be determined by the office of state planning and budgeting.
Payment of the salaries and operating expenses incurred in the administration of the fund and losses sustained by liabilities incurred under the contracts and policies of insurance issued by the state compensation insurance fund is authorized by this statute. C.R.S. 1973, 8-54-102 provides that the manager of the fund can exercise full power and jurisdiction over the fund and may do and perform in the administration of the fund "as fully and completely as the governing body of a private insurance company." This provision, when considered in conjunction with the provisions of C.R.S. 1973, 8-54-106, sets forth the parameters for use of fund moneys and the general assembly's power of appropriation vis-a-vis the state compensation insurance fund.
The statutes provide no authorization to appropriate funds for purposes outside those provided by article 54 of Title 8, C.R.S. 1973, quoted above. Thus, the question you've raised is essentially whether the general assembly's appropriation of the state compensation insurance fund moneys is for purposes within the statutes.
In that the general assembly has appropriated some funds from the state compensation insurance fund moneys to pay the costs of the Industrial Commission and of the Office of the Executive Director of the Department of Labor and Employment, insofar as those costs are directly attributable to the operation of the state compensation insurance fund, e.g. the involvement of the executive director in carrying out his statutory duty, C.R.S. 1973, 8-54-104, in aiding in the preparation of the budget, one might assume that the appropriation by the general assembly is for similar overhead costs. This would be possible if the vocational rehabilitation officer of the Division of Labor carries out employee services which are properly part of the state compensation insurance fund's overhead costs. However, this does not appear to be the case. C.R.S. 1973, 8-49-103, as amended, makes the Division of Labor the administrator of the vocational rehabilitation provisions of the Workmen's Compensation Act as part of the Division of Labor's
overall program. The position of vocational rehabilitation officer, described under the Division of Labor's personnel classification as an administrative officer IV has the following duties:
 Makes physical inspection of rehabilitation facilities and institutions. Evaluates adequacy of same and makes appropriate recommendations to the director. Reviews workmen's compensation files to make determinations of eligibility for rehabilitation. Maintains contact with individual claimants and rehabilitative facilities to determine progress and update evaluations of facilities and institutions providing rehabilitative services. Attends hearings on contested cases. Confers with physicians, therapists and administrators relative to an evaluation of rehabilitative services. Evaluates medical reports and evaluates possible disability and feasibility for rehabilitation. Monitors the performance of rehabilitative facilities or institutions and the progress of claimants' rehabilitation. Makes recommendations to director concerning cessation, completion, or additional rehabilitation benefits. Writes technical reports regarding rehabilitation of individual claimants and the quality of rehabilitative facilities relative to claimant needs.
This job description clearly defines the role of the vocational rehabilitation officer as one solely within the ambit of the Workmen's Compensation Act and the Division of Labor's duty to administer the Act. Performance of these duties provides no direct benefit or service to the state compensation fund, but rather provides the same type of "regulation" (which is the basic nature of the function of the vocational rehabilitation officer) by the Division of Labor over the state compensation insurance fund as is exercised over any employer or insurance company's activities in providing vocational rehabilitation to claimants.
In addition to the fact that the appropriation by the general assembly appears to be contrary to the statutory mandate set forth in C.R.S. 1973, 8-54-106, it should be also noted that cases from other jurisdictions dealing with somewhat similar issues of attempted appropriations from state compensation insurance funds have determined those funds to be "trust funds" of an inviolate nature. The case attached to your memorandum,Moran v. State ex rel. Derryberry, 534 P.2d 1282
(Okla. 1975), raised the issues as to the status of the state insurance fund and the right of the state acting through the legislature to take and use those funds. The Moran
decision appears to be the most current and definitive explanation as to the nature of the moneys in a state compensation insurance fund. Moreover, the Oklahoma fund is established by statutory provisions virtually identical to those of Colorado.
The court in Moran, supra, held that the state insurance fund moneys were trust funds which did not belong to the state but to the contributing employers for their mutual benefit. The court cited numerous other decisions supporting the same view that such funds are trust funds. In an older but similar case, State ex rel. Williams v. Musgrave,370 P.2d 778, 782 (Idaho 1962), the Supreme Court of Idaho in ruling on an action by the state auditor to recover moneys paid to a private attorney out of the state compensation insurance fund held in pertinent part:
 The money in the fund does not belong to the state and is not in the state `treasury' within the meaning of art. 7, section 13 of the Constitution. It is deposited with the state `treasurer' as `custodian' and is held by him as such for the contributing employers and the beneficiaries of the compensation law, and for the payment of the costs of the operation of the fund . . . .
(Citations omitted.)
Accord: State ex rel. Beebe v. McMillan,36 Nev. 383, 136 P. 108, 110 (1913). In State v. Yelle,174 Wn. 547, 25 P.2d 569, cited in Moran,supra, the court, in construing an act of the legislature to appropriate moneys from the compensation act fund, noted that the act itself made the fund a trust and found that the funds were not subject to appropriation by the legislature for purposes other than those contemplated by the act. A similar ruling is found in Middlebusher v. State IndustrialAccident Commission, 147 Ore. 459, 34 P.2d 325,327 (1934). These court decisions establish other state compensation insurance funds as trust funds for the purposes expressed in the statutes; and, therefore, appropriation for purposes outside the scope of the statutes has been held to be improper because the funds were not state moneys subject to such appropriation.
SUMMARY
Under the court decisions cited, supra, one is led to the conclusion that Colorado's state compensation insurance fund is also a "trust" fund, i.e., that the moneys therein are not "state moneys" which can be appropriated outside the scope of the enabling statute or its purposes. Therefore, the appropriation by the general assembly is improper not only because of the lack of statutory authorization but also because an appropriation of funds from a "trust" for non-trust purposes would be improper and illegal.
Very truly yours,
 J.D. MacFARLANE Attorney General
WORKMEN'S COMPENSATION APPROPRIATIONS PUBLIC FUNDS TRUST FUNDS
C.R.S. 1973, 8-54-106 C.R.S. 1973, 8-54-102 C.R.S. 1973, 8-54-104 C.R.S. 1973, 8-49-103
LABOR EMPLOYMENT DEPT. Labor, Div. of State Comp. Insurance Fund LEGISLATIVE BRANCH General Assembly
Vocational rehabilitation officer's duties provide no direct benefit or service to the state compensation fund, consequently the general assembly may not appropriate moneys from the state compensation fund to pay his salary.