Dear Representatives, Campbell
¶ 0 The Attorney General has received your letter asking for an official opinion addressing, in effect, the following questions:
1. Does the transfer of funds effected by Senate Bill 415,1991 Okla. Sess. Laws, c. 263, from the Oklahoma State GroupInsurance Board to the General Revenue Fund constitute anunauthorized use of the Constitutional Reserve Fund establishedby Article X, Section 23 of the Oklahoma Constitution?
 2. Does Senate Bill 415, 1991 Okla. Sess. Laws, c. 263,require an unauthorized transfer of funds held in trust for theuse of employees covered by the State's Group Insurance Plan?
 I.
¶ 1 Consideration of both your questions requires an overview of the State and Education Employees Group Insurance Act (the Act), 74 O.S. 1300 (1990) et seq., and the Constitutional Reserve Fund established by Article X, Section 23 of the Oklahoma Constitution, and of recent gubernatorial and legislative action regarding the State and Education Employees Board and the Constitutional Reserve Fund. The Group Insurance Act establishes the Group Insurance Board and confers a number of powers and duties upon it, including (1) the preparation of specifications for health and life insurance plans for state employees; (2) the determination of the eligibility of state employees and their dependents to participate in insurance plans; and (3) the administration of funds generated by such plans. 74 O.S. 1306
(1990).
¶ 2 74 O.S. 1312 of the Act establishes a Health, Dental and Life Insurance Reserve Fund in the State Treasury and further provides that all employee contributions, appropriations, and dividend payments are to be deposited in this Reserve Fund. 74O.S. 1312 also states that all monies payable to the claims administrator and all expenses incurred in connection with the subject plans shall be paid from the Reserve Fund. Another section of the Act provides that each state agency participating in the group insurance plans under the Act shall "appropriate and pay to the Health, Dental, and Life Insurance Reserve Funds an amount to be set by the State and Education Employees Group Insurance Board . . . from funds appropriated to said agency or from other funds available to such agency for operational purposes." 74 O.S. 1310 (1990).
¶ 3 Article X, Section 23 of the Oklahoma Constitution establishes a Constitutional Reserve Fund. Article X, Section 23 provides that, for a particular fiscal year, monies accruing to the General Revenue Fund over and above the itemized estimate of annual revenue made by the State Board of Equalization shall be deposited into this Constitutional Reserve Fund. Under Article X, Section 23, surplus funds must be deposited into the Constitutional Reserve Fund until such time as the amount of the Constitutional Reserve Fund equals ten percent of the General Revenue Fund certification for the preceding fiscal year.
¶ 4 Article X, Section 23 further states that up to one-half of the balance of the Constitutional Reserve Fund at the beginning of the current fiscal year may be appropriated upon a declaration that emergency conditions exist. Under Article X, Section 23, there are two procedures for declaring such emergency conditions. First, the Governor may declare that such conditions exist. If the Governor does so, appropriations from the Constitutional Reserve Fund are authorized only if the Legislature then concurs by a two-thirds vote of the House of Representatives and the Senate. Alternatively, the Speaker of the House of Representatives and the President Pro Tempore of the Senate may jointly declare that emergency conditions exist. If such a joint declaration is made, appropriations from the Constitutional Reserve Fund are authorized only upon a concurrence by a three-fourths vote of both the House of Representatives and the Senate.
¶ 5 In January, 1990, Governor Henry Bellmon issued an Executive Declaration of Emergency in which he concluded that an emergency existed in Oklahoma because of "a threat to the solvency of the Oklahoma State and Education Employees Group Insurance Board." In light of this emergency, Governor Bellmon requested the Legislature to specially appropriate a sum of up to $30 million from the Constitutional Reserve Fund to reimburse the Insurance Reserve Fund established by 74 O.S. 1312 (1990).
¶ 6 In May, 1990, the Legislature complied with Governor Bellmon's request by passing House Bill 1016, 1989 Okla. Sess. Laws Supp. (First Extraordinary Session), c. 3. Section 3 of that bill provides:
 There is hereby appropriated to the State and Education Employees Group Insurance Board from any monies not otherwise appropriated from the Constitutional Reserve Fund of the State Treasury the sum of Thirty Million Dollars ($30,000,000.00) or so much thereof as may be necessary to properly fund the health plan reserve. The monies appropriated by this section shall be transferred to the Health and Dental Insurance Reserve Fund as established in 74 O.S. 1312 of the Oklahoma Statutes.
¶ 7 Subsequently, in May 1991, the Legislature passed Senate Bill 415, 1991 Okla. Sess. Laws, c. 263. Section 11 of Senate Bill 415, to be codified as 74 O.S. 1312.3 (1991), establishes a "State Employees Group Insurance Clearing Fund." It states:
 There is hereby created in the State Treasury, the State Employees Group Insurance Clearing Fund. The monies paid to the State Employees Group Insurance Clearing Fund pursuant to 74 O.S. 1310 of this title shall be distributed as follows:
 1. The first Thirty-one Million Five Hundred Seventy-eight Thousand Nine Hundred Forty-seven dollars and thirtyseven cents ($31,578,947.37) received during the fiscal year beginning July 1, 1991, shall be distributed to the General Revenue Fund of the State Treasury for the fiscal year ending June 30, 1992; and
 2. The balance thereof shall be distributed to and deposited in the appropriate reserve fund as directed by the State and Education Employees Group Insurance Board.
¶ 8 Section 8 of Senate Bill 415, to be codified as an amendment to 74 O.S. 1310 (1990), provides that the State and Education Employees Group Insurance Board is to determine the amounts to be deposited into the Clearing Fund by each participating agency. It states:
 B. During the fiscal year ending June 30, 1992, each state agency participating in the Group Insurance Plans shall appropriate and pay to the State Employees Group Insurance Clearing Fund an amount to be set by the State and Education Employees Group Insurance Board for each employee other than education employees per month enrolled in said Plans, from funds appropriated to said agency or from other funds available to such agency for operational purposes.
¶ 9 In summary, by means of Governor Bellmon's Declaration and House Bill 1016, Thirty Million Dollars ($30,000,000.00) was transferred from the Constitutional Reserve Fund to the Insurance Reserve Fund. Subsequently, in Senate Bill 415, the Legislature directed each state agency participating in the State Group Insurance Plan to deposit funds into the Clearing Fund in an amount to be determined by the Board on the basis of the number of non-educational agency employees that participate in the State Group Insurance Plan. Under Senate Bill 415, the first $31,578,947.37 from the Clearing Fund is to be deposited into the General Revenue Fund and the remainder is to be deposited in an appropriate reserve fund administered by the Board.
 II.
¶ 10 Your first question raises the issue of the proper use of the Constitutional Reserve Fund established by Article X, Section23 of the Oklahoma Constitution. Under the terms of Article X, Section 23, appropriations from the Constitutional Reserve Fund are proper only when emergency conditions exist. Under Article X, Section 23, the authority to make the determination whether such conditions exist rests with the Legislature and the Governor. As a general rule, such determinations are "not subject to review by the courts or by any other authority except the people." Quinnv. City of Tulsa, 977 P.2d 1331, 1334 (Okla. 1989), quotingOklahoma City v. Shields, 100 P. 559, 576 (Okla. 1908). Accordingly, in this opinion, we will assume that emergency conditions did exist and that these conditions were sufficient to justify the appropriation from the Constitutional Reserve Fund by means of Governor Bellmon's January, 1990 declaration and House Bill 1016.
¶ 11 Assuming that emergency conditions did exist, and assuming that these conditions were sufficient to justify the initial $30,000,000 appropriation from the Constitutional Reserve Fund to the Group Insurance Board, your first question can be answered by considering the source of the funds to be deposited into the new "State Employees Group Insurance Clearing Fund." In particular, as noted above, in House Bill 1016, the Legislature did appropriate up to $30 million from the Constitutional Reserve Fund to the Group Insurance Board.
¶ 12 However, in Senate Bill 415, the Legislature neither transferred funds back to the Constitutional Reserve Fund nor appropriated additional funds from it. Instead, the Legislature established a new fund, athe State Employees Group Insurance Clearing Fund." Under 8 of Senate Bill 415, to be codified as an amendment to 74 O.S. 1310 (1990), monies are deposited into the Clearing Fund by participating state agencies from funds appropriated to the agencies or from funds available to the agencies for operational purposes. Thus, the Clearing Fund is financed by state agency monies rather than by the Insurance Reserve Fund established by 74 O.S. 1312 (1990) or the Constitutional Reserve Fund established by Article X, Section 23. Accordingly, the transfer of funds mandated by Senate Bill 415 does not constitute an unauthorized use of the Constitutional Reserve Fund.
 III.
¶ 13 Your second question addresses the appropriate use of funds held in trust for the state employees who participate in group insurance plans administered by the Group Insurance Board. You have specifically asked whether Senate Bill 415's transfer of funds to the General Revenue Fund is prohibited by the Supreme Court's decision in Moran v. State of Oklahoma, 534 P.2d 1282
(Okla. 1975).
¶ 14 In Moran, the Court addressed the appropriate uses of the State Insurance Fund established by 85 O.S. 131 (1981) as amended. That fund was established in ordar to insure employers against liability under the workers compensation laws and to assure coverage to those persons entitled to it under those laws. However, in 1974, the Oklahoma Legislature enacted a series of statutes that transferred monies from the State Insurance Fund established by 85 O.S. 131 (1981) to the State Board of Education. 534 P.2d at 1284.
¶ 15 The Moran Court held that this statutory transfer violated Article II, Section 15 of the Oklahoma Constitution, which prohibits the enactment of laws that impair contractual obligations. It reasoned that the monies deposited in the 85O.S. 131 Insurance Fund constituted trust funds held for the benefit of employers and employees and that, as a result, these funds were available for neither athe general or other purposes of the state" nor for legislative appropriations for purposes other than those contemplated by the State Insurance Fund Act,85 O.S. 131 (1981) et seq. as amended. 534 P.2d at 1288. In light of the nature of these funds, the Court found, the attempted transfer to the Department of Education violated the contractual rights of the employees and employers contributing to the fund. 534 P.2d at 1288.
¶ 16 In fact, a number of other state courts have followed the reasoning of Moran. These courts have held unconstitutional state legislatures' attempts to transfer monies deposited in various state insurance funds to general revenue funds. These courts have based their holdings on the principle that the monies held in these insurance funds are held in trust for the funds' beneficiaries. See, e.g., Eckles v. State, 760 P.2d 846 (Ore. 1988); State v. Yelle, 25 P.2d 569 (Wash. 1933). See alsoDadisman v. Moore, 384 S.E. 2d 816 (W.Va. 1988) (discussing trust status of state employees' retirement system fund).
¶ 17 For several reasons, Moran and similar cases from other jurisdictions are inapplicable to the transfer of funds effected by Senate Bill 415. First, unlike the statutes declared unconstitutional in Moran and analogous cases, Senate Bill 415 does not attempt to transfer any funds now held in an insurance fund for the use of particular beneficiaries. Instead, participating agencies are required to contribute monies to the Clearing Fund (in an amount to be determined by the Group Insurance Board) from appropriated funds and funds available for operational purposes. Prior to their transfer to the Clearing Fund by participating agencies, these funds are, by definition, not specifically designated for use by the participants in the group plans.
¶ 18 This lack of specific designation is dispositive. Under Oklahoma law, the creation of a trust requires, inter alia: (1) an intent by the party establishing the trust that funds be held and managed "for the benefit of sufficiently certain beneficiaries"; and (2) "an act which constitutes a present, complete disposition of the trust property." Matter of Estate ofStokes, 747 P.2d 300, 302 (Okla. 1987). See also, Girdner v.Girdner, 337 P.2d 741, 745 (Okla. 1959). Since it does not direct the transfer to the General Revenue Fund of monies that have been previously designated for use only for the benefit of individuals participating in the state insurance plans, Senate Bill 415 (unlike the legislation considered in Moran) does not effect a transfer of trust funds.
¶ 19 In instances in which trust monies are not involved, the Legislature's broad power over taxation matters authorizes it to establish funds such as the "State Employees Group Insurance Clearing Fund." See City of Sand Springs v. Department of PublicWelfare, 608 P.2d 1139, 1148-49 (Okla. 1980). Moreover, ArticleX, Section 23 of the Oklahoma Constitution specifically authorizes the Legislature to transfer "existing revenues or unappropriated cash on hand from one fund to another." As a result, Senate Bill 415's transfer of funds is analogous to the transfer effected by a number of other statutes. See e.g., 62O.S. 211 (1981) (requiring transfer of 10% of gross fees of professional licensing agencies to the General Revenue Fund).
¶ 20 It is, therefore, the official opinion of the AttorneyGeneral that:
 1. The transfer of funds effected by Senate Bill 415,1991 Okla. Sess. Laws, c. 263 (from the Oklahoma State Group InsuranceBoard to the General Revenue Fund) does not constitute anunauthorized use of the Constitutional Reserve Fund establishedby Article X, Section 23 of the Oklahoma Constitution;
 2. Senate Bill 415, 1991 Okla. Sess. Laws, c. 263 does notrequire an unauthorized transfer of funds held in trust for theuse of employees covered by the State's Group Insurance Plan.
SUSAN BRIMER LOVING ATTORNEY GENERAL OF OKLAHOMA
RABINDRANATH RAMANA ASSISTANT ATTORNEY GENERAL