2012 OK CIV APP 22

**COMPSOURCE OKLAHOMA,**
**Plaintiff/Appellee,**

v.

**NATIONAL AMERICAN INSURANCE COMPANY, an Oklahoma Insurance Corporation, Defendant/Appellant.**

**No. 109,222.**

Court of Civil Appeals of Oklahoma,
Division No. 3.

Jan. 26, 2012.

Anton J. Rupert, Robert G. McCampbell, Mary H. Tolbert, Crowe & Dunlevy, Oklahoma City, Oklahoma, for Plaintiff/Appellee.

Galen L. Brittingham, Rhiannon K. Baker, Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, Tulsa, Oklahoma, and R. Patrick Gilmore, Chandler, Oklahoma, for Defendant/Appellant.

7. Dr. Saul's Motion to Strike and/or Motion to Dismiss is denied.

BAY MITCHELL, Judge.

¶ 1 Defendant/Appellant, National American Insurance Company, an Oklahoma Insurance Corporation ("NAICO"), seeks review of an Order granting Plaintiff/Appellee CompSource Oklahoma's ("CompSource") Motion for Summary Judgment and denying NAICO's Cross–Motion for Summary Judgment in this declaratory judgment action. The trial court's summary judgment determination was reached upon its finding that CompSource is not subject to the Oklahoma Open Records Act, 51 O.S. § 24A.1, *et seq.* ("the Act").

¶ 2 CompSource filed this declaratory judgment action seeking a determination that it is not subject to the Act after receiving three open records requests from NAICO, its competitor in the workers' compensation insurance market. Premised upon the express public policy that "the people are vested with the inherent right to know and be fully informed about their government," § 24A.2, the Act requires public bodies and public officials to keep, maintain and release certain records for public inspection. 51 O.S. §§ 24A.2 and 24A.5. NAICO contends CompSource is a public body supported by public funding, which renders it subject to the Act and therefore required to release requested documents. Upon its consideration of evidence including that which demonstrated CompSource is funded entirely by premiums paid by policyholders rather than by government funds, the trial court determined CompSource was not subject to the Act as a matter of law. NAICO appeals from this determination.

¶ 3 The appellate standard of review of a trial court's grant of summary judgment is *de novo. Kirkpatrick v. Chrysler Corp.,* 1996 OK 136, 920 P.2d 122. This Court will examine the pleadings and evidentiary materials submitted by the parties to determine if there is a genuine issue of material fact. *Ross v. City of Shawnee,* 1984 OK 43, ¶ 7, 683 P.2d 535, 536. All inferences and conclusions to be drawn from the evidentiary materials must be viewed in the light most favorable to the non-moving party. *Id.*

¶ 4 The Act defines "public body" in pertinent part as:

any office, department, board, bureau, commission, agency, trusteeship, authority, council, committee, trust or any entity created by a trust, county, city, village, town, township, district, school district, fair board, court, executive office, advisory group, task force, study group, or any subdivision thereof, **supported in whole or in part by public funds or entrusted with the expenditure of public funds or administering or operating public property,** and all committees, or subcommittees thereof. Except for the records required by Section 24A.4 of this title, "public body" does not mean judges, justices, the Council on Judicial Complaints, the Legislature, or legislators.

51 O.S. § 24A.3(2) (emphasis added). In order for CompSource to fall within the statutory definition of "public body," which would be subject to the Act, it must be (1) supported in whole or in part by public funds; or (2) entrusted with the expenditure of public funds; or (3) administering or operating public property.

¶ 5 The record discloses that although CompSource was legislatively created to provide workers' compensation insurance to public and private employers in Oklahoma, it receives no financial appropriations from the Legislature. CompSource's Motion is supported by the Affidavit of its Chief Financial Officer, which provides "the business of [CompSource] is supported entirely by premiums paid by its policyholders and investment income." *See Fehring v. State Ins. Fund,* 2001 OK 11, ¶ 14, 19 P.3d 276 (noting "[t]he operational expenses of [the State Insurance Fund, which was re-named CompSource in July, 2001] and the payment of compensation awards to injured workers are funded through premiums charged to covered employers and any investment income received by [the State Insurance Fund]").

¶ 6 NAICO argues CompSource is publicly funded in part because it received one $25,000 appropriation from the Legislature upon its creation in 1933. However, the Oklahoma Supreme Court has noted that appropriation "was never paid or set over to the State Insurance Fund. It appears to be agreed, or conceded, that no State appropriation has ever been used by the State Insur-

ance Fund." *Moran v. Derryberry*, 1975 OK 69, ¶ 17, 534 P.2d 1282, 1285. There was no other evidence presented that CompSource is publicly funded. It is therefore undisputed that CompSource has never received appropriated funds from the Oklahoma Legislature.[1]

■ ¶ 7 NAICO also argues that because the CompSource Board of Managers is composed of four public officials, four legislative appointees, and one member appointed by the Governor, CompSource is a "public body" subject to the Act. Further, NAICO contends the Board of Managers should be subject to the Act just as it is subject to the Oklahoma Open Meeting Act, 25 O.S.2001 § 301 *et seq.* First, we note the fact that the Board of Managers is comprised of individual public officials does not render CompSource a public body as it is statutorily defined. Secondly, while there is evidence in the record disclosing that the Board of Managers provided notice of its meetings in compliance with the Oklahoma Open Meeting Act, NAICO provides neither evidentiary nor decisional authority supportive of the proposition that CompSource is an entity required to comply with all the provisions of the Open Meeting Act.[2]

¶ 8 NAICO additionally argues CompSource's funds and/or its Board of Managers [3] is supported in part by public funds on the basis that CompSource funds are deposited into the State Treasury. The legal nature of CompSource's funds has previously been decided by our highest Court:

It is our conclusion the funds of the State Insurance Fund are not State funds and do not belong to the State, that such funds are trust funds for the benefit of employers and employees, and are not available for the general or other purposes of the State, nor are they subject to appropriation by the Legislature for purposes other than those contemplated by the State Insurance Fund Act.

*Moran*, 1975 OK 69, 534 P.2d at 1288.[4] Based upon the rule in Moran, CompSource funds are clearly not public funds despite NAICO's assertion to the contrary.

¶ 9 NAICO's additional arguments to the effect that CompSource's employees are considered State employees and/or the State's "pervasive and ongoing involvement" with CompSource have little, if any relevance to the critical determination of whether CompSource meets the statutory definition of "public body," specifically whether it is supported in whole or part by public funds. In any event, the record does not support NAICO's argument that the Legislature has "extensive" control over CompSource (presumably by appointment of four of the nine members of the Board of Managers).

¶ 10 NAICO contends CompSource is entrusted with the expenditure of public funds by virtue of its administration of two statutory funds, and therefore meets the statutory definition of public body. This argument pertains specifically to CompSource's duties

1. We summarily reject NAICO's arguments concerning CompSource's tax exempt status and Oklahoma's Comprehensive Annual Financial Reports insomuch as they lack merit and exclusively involve tax refund funds and/or premium payments due CompSource rather than a government appropriation.

2. NAICO's reliance on *Sanders v. Benton*, 1978 OK 53, 579 P.2d 815 is misplaced. Where a government entity creates a "subordinate entity," the issue of whether or not the subordinate entity was supported in whole or part by public funds is not controlling over the issue of the application of the Open Meeting Act. The Court in *Sanders* concluded that when a subordinate entity, created by a parent entity subject to the Open Meeting Act, exercises actual or *de facto* decision-making authority, the subordinate entity must comply with the Open Meeting Act. The rule in *Sanders* is inapplicable here because the Legislature (the governmental entity which creat-

ed CompSource) is expressly excluded from the Open Meeting Act. Further, CompSource does not exercise decision making authority on behalf of the Legislature.

3. By law "[a]ll information obtained by the members of the Board [of Managers]shall be confidential unless disclosed by order of the Board." 85 O.S. § 131a(C) (renumbered as 85 O.S. Supp. 2011 § 376(C)). This broad statutory language illustrates legislative intent for "all information" (which would include "records" within the meaning of the Act), of the Board of Managers to be protected from compulsory disclosure.

4. The Workers' Compensation Act refers to CompSource itself as a fund, which "shall be fairly competitive with other insurance carriers and it is the intent of the Legislature that said fund shall become neither more nor less than self-supporting." 85 O.S. Supp.2011 § 375(c).

and/or operations with respect to the Volunteer Firefighters Group Insurance Pool ("the Pool")[5] and the Multiple Injury Trust Fund ("MITF").[6] NAICO asserts CompSource administers these funds, which constitutes the expenditure of public funds, and thereby brings CompSource within the meaning of the statutory definition of "public body" subject to the Act. We disagree.

¶ 11 The record reflects that state agencies, public trusts and other state instrumentalities pay their *pro rata* share of the premium for the policy issued to the Pool, which provides workers' compensation insurance to volunteer firefighters. CompSource collects these premium payments, which become trust funds held for the benefit of employers and employees protected by the policies issued by CompSource. *See Moran,* 1975 OK 69, 534 P.2d at 1288. No volunteer fire department pays any portion of the premium, nor does the State make any legislative appropriation to CompSource for the policy. CompSource's collection of premiums (which are thereafter deposited in the CompSource fund with the State Treasurer become trust funds for the specific purposes designated in the statute pertaining to the Pool. This operation does not constitute the expenditure of public funds within the meaning of the Act and therefore, does not render CompSource subject thereto.

¶ 12 Similarly, we find that CompSource's administration of MITF did not include the expenditure of public funds. The record clearly demonstrates CompSource's administrative involvement over MITF was very limited.[7] The record reflects CompSource had no management control over the MITF, was not authorized to withdraw funds from the MITF account, and did not pay claims for the fund. The MITF was funded through the collection of taxes. *See Special Indemnity Fund v. Weber,* 1995 OK 43, 895 P.2d 292, 296. The MITF operated as a distinct entity, which adjudicated or settled claims it incurred as a result of claimants who had suffered more than one on-the-job injury.

MITF was responsible for paying the claims from its own account with the State Treasurer. (CompSource did not expend funds in payment of worker's compensation claims made against the MITF). By statute (now repealed), MITF was expressly authorized to receive and expend monies appropriated by the Legislature. *See* 85 O.S. Supp.2005 § 173(B)(repealed in 2011). NAICO failed to offer proof supportive of a finding that MITF's receipt and expenditure of public funds was the functional equivalent of CompSource's receipt and/or expenditure thereof, particularly given the proof of limited nature of CompSource's administrative duties over MITF. We find as a matter of law that CompSource was not entrusted with the expenditure of public funds by way of its statutory administration of MITF, and therefore is not a public body subject to the Act.

¶ 13 This Court's *de novo* review of the record supports the trial court's grant of summary judgment in favor of CompSource.

¶ 14 AFFIRMED.

HETHERINGTON, J., and BUETTNER, P.J. (sitting by designation), concur.

---

5.  85 O.S.2001 § 132a (re-numbered 85 O.S. Supp.2011 § 380).

6.  85 O.S.2001 § 175 (repealed 2011).

7.  85 O.S. Supp.2005 § 173 (repealed in 2011) set forth in complex detail the sources of funds, manner of payment of assessments, as well as the duties of the Tax Commission and the Workers' Compensation Court Administrator with respect to the MITF.