184 P.3d 467 (2008)
2008 OK 2
Jerry R. FENT, as a resident taxpayer, citizen and voter of the State of Oklahoma, and all other similar persons, Petitioners,
v.
STATE of Oklahoma, ex rel. OFFICE OF STATE FINANCE, and Tony Hutchison, as State Finance Director; State of Oklahoma, ex rel. Office of the State Treasurer, and Scott Meacham, as State Treasurer, Respondents.
No. 104,777.
Supreme Court of Oklahoma.
January 22, 2008.
Petitioner Jerry R. Fent, pro se, Oklahoma City, OK.
Scott D. Boughton and Stephen J. Krise, Assistant Attorneys General, Office of the Oklahoma Attorney General, Oklahoma City, OK, for respondents State of Oklahoma ex rel. Office of State Finance, Tony Hutchison, State Finance Director, and State of Oklahoma ex rel. Office of the State Treasurer.
Respondent State Treasurer, Scott Meacham, pro se, Oklahoma City, OK.
TAYLOR, J.
¶ 1 In this original proceeding, we are asked to issue an extraordinary writ to restrain the State Finance Director, the State Treasurer, and/or heads of agencies, if necessary, from transferring, allocating, or paying out any state money pursuant to Enrolled House Bill 1105 (H.B.1105) of the First Regular Session of the Fifty-first Oklahoma Legislature, 2007 Okla.Sess.Laws, ch. 204. Having fully considered the record, the arguments, and the authorities presented, we deny the petition for injunction or writ of mandamus.

I.H.B.1105
¶ 2 On May 24, 2007, both houses of the Oklahoma Legislature passed H.B.1105. On May 25, 2007, the Governor received H.B. 1105 and the First Regular Session of the Fifty-first Oklahoma Legislature finally adjourned sine die in accordance with the Okla. Const., art. V, § 26.[1] On June 4, 2007, the Governor approved H.B.1105. Effective July 1, 2007, H.B.1105 transfers some 135 Million Dollars of surplus accrued in the General Revenue Fund as of June 30, 2007, for expenditure by some sixteen state agencies.
¶ 3 H.B.1105 contains five sections of law: one section allocates and transfers the surplus funds, two sections create and govern a *471 revolving fund, and two sections declare an effective date for the act and an emergency. Section 1, to be codified in the Oklahoma Statutes as § 46.3 of Title 62, consists of subsections (A) and (B). Subsection 1(A) directs the transfer of more than 135 Million Dollars of surplus funds which may accrue in the General Revenue Fund for the State of Oklahoma for the fiscal year ending June 30, 2007,[2] and allocates the funds for expenditure by agencies in the executive branch of state government. Subsection (1)(B) lifts the fiscal year budgetary category and amount limitations on the transfers.[3]
¶ 4 In twenty-three enumerated paragraphs, subsection 1(A) of H.B. 1105 transfers and allocates specific amounts of the surplus funds to state agencies or agency revolving funds.[4] The paragraphs prioritize the allocations. Paragraph 1 sets aside the "first Ten Million Dollars . . . to fund employer contribution rate increases" to teachers retirement for the common schools and higher education, paragraph 2 sets aside the "next Ten Million Dollars . . . to the State Emergency Fund," paragraph 3 sets aside the "next Twenty-two Million Dollars . . . for purposes of a teacher salary increase," and so on.
¶ 5 A large part of the 135 Million Dollars of surplus funds is allocated to support public education. In three different paragraphs, subsection 1(A) of H.B.1105 allocates more than 27 Million Dollars to the State Department of Education for teacher retirement and teacher pay increases and pay incentives and, in four different paragraphs, it allocates nearly 43 Million Dollars to the State Regents Revolving Fund of the Oklahoma State Regents for Higher Education for operational expenses and capital improvements. The surplus funds are also allocated for several different and unrelated governmental purposes, including 15 Million Dollars to the Oklahoma Capitol Complex and Centennial Commemoration Commission Revolving Fund, 2.5 Million Dollars to the Rural Fire Equipment Grant Revolving Fund, 6.5 Million Dollars to the Research Support Revolving Fund, 6.5 Million Dollars to the Department of Public Safety Revolving Fund, 2 Million Dollars to the School for Deaf/Blind Revolving Fund, and 5 Million Dollars to the Private Prison and Halfway House Capacity Development Revolving Fund.
¶ 6 Section 2 of H.B.1105 creates the Private Prison and Halfway House Capacity Development Revolving Fund to be expended by the Department of Corrections. Section 3 of H.B.1105 authorizes the Department of Corrections to utilize the funds in the Private Prison and Halfway House Capacity Development Revolving Fund for payments on contracts in effect on July 1, 2007, for the purpose of funding up to five percent increase in payments to be made pursuant to such contracts. Sections 4 and 5 of H.B.1105 provide the act will be effective on July 1, 2007, and declare an emergency in accordance with the Okla. Const., art. V, § 58.[5]

*472 II. The Proceedings
¶ 7 Petitioner filed an application to assume original jurisdiction and petition for declaratory relief and writs of injunction and/or mandamus and supporting brief on June 21, 2007, before H.B.1105 became effective. The petition challenged H.B.1105 under art. V, §§ 55, 56, and 57 and art. X, § 23 of the Oklahoma Constitution. Petitioner requested a temporary stay restraining allocation, transfer, or expenditure of funds under H.B.1105, an accounting of all transfers and expenditures of funds previously made under H.B.1105, and oral argument before this Court. This Court denied the request for a temporary restraining order and scheduled oral argument before the Court en banc on the validity of H.B.1105, the propriety of an injunction or a writ of mandamus, and the necessity of an accounting. At the conclusion of the oral argument on October 16, 2007, this Court assumed original jurisdiction and submitted the case for an opinion.

III. The Parties' Arguments
¶ 8 Petitioner challenged H.B.1105 as attempting to transfer funds from the Constitutional Reserve Fund in violation of art. X, § 23(4) of the Oklahoma Constitution. He also challenged H.B.1105 as an appropriation bill that contains general law provisions contrary to the one-subject rule in art. V, § 57 and that contains multiple-agency appropriations contrary to the one-subject rule in art. V, § 56 and the necessity rule in art. V, § 55 of the Oklahoma Constitution. Petitioner argued that the appropriations in H.B.1105 constitute illegal "log rolling," citing Campbell v. White, 1993 OK 89, 856 P.2d 255; Johnson v. Walters, 1991 OK 107, 819 P.2d 694; Draper v. State, 1980 OK 117, 621 P.2d 1142.
¶ 9 The State Finance Director, the Office of State Finance, and the Office of State Treasurer responded that petitioner's entire challenge is based upon the incorrect premise that H.B.1105 transfers money out of the Constitutional Reserve Fund. These respondents contended that the Legislature is authorized by art. X, § 23 of the Oklahoma Constitution to transfer the surplus cash on hand in the General Revenue Fund to other funds in the State Treasury under Calvey v. Daxon, 2000 OK 17, 997 P.2d 164. They urged that H.B.1105 is presumed valid, citing Bethany v. Public Employees Relations Bd., 1995 OK 99, ¶ 14, 904 P.2d 604, and that any constitutional limitation or restriction on the Legislature must be strictly construed, citing Tate v. Logan, 1961 OK 136, ¶ 19, 362 P.2d 670. They argued that the Legislature has the authority to establish the state's fiscal policy and that this Court has no authority to consider the desirability, wisdom, or practicality of the transfers of unappropriated cash on hand from one fund to another in H.B.1105.
¶ 10 The State Treasurer asserted that H.B.1105 does not violate the one-subject requirement in art. V, §§ 56 and 57 because all its provisions relate to the common theme of allocation of surplus funds and the common theme of establishing and managing accounts under the Okla. Const., art. X, § 30.[6] He argued that H.B.1105 does not direct money to be paid out of the State Treasury so that art. V, § 55 does not apply. He also argued that H.B.1105 merely transfers and allocates funds within state government, does not appropriate for expenses of the three branches of government, and therefore is not "other appropriations" to fund agency operations under art. V, § 56.

IV. The Constitutional Provisions

a. Article X, § 23
¶ 11 We begin with the challenge to H.B. 1105 under art. X, § 23 of the Oklahoma Constitution. The people of Oklahoma adopted art. X, § 23 to require the Legislature *473 to balance the state's expenditures with its revenues. Draper v. State Bd. of Equalization, 1966 OK 87, 414 P.2d 276. Referred to as the balanced budget law, art. X, § 23 is a detailed plan to assure the State operates within its revenues. It sets forth the formula for the State Board of Equalization to estimate revenues for the next ensuing fiscal year, limits appropriations to the State Board's itemized estimate of revenues, and declares all appropriations made in excess of the certified estimate to be null and void.[7] It provides for the monthly allocation of revenues to the appropriations and the reduction of appropriations upon a revenue shortfall. It also defines surplus revenues and provides for a Constitutional Reserve Fund for emergency conditions.
¶ 12 Petitioner argued that H.B.1105 appropriates money in the Constitutional Reserve Fund in violation of art. X, § 23(4). We find no merit in this argument. Article X, § 23(4) defines surplus funds or monies as "any amount accruing to the General Revenue Fund of the State of Oklahoma over and above the itemized estimate made by the State Board of Equalization." It requires that surplus funds or monies "shall be placed in a Constitutional Reserve Fund by the State Treasurer until such time that the amount of said Fund equals ten percent (10%) of the General Revenue Fund certification for the preceding fiscal year." The record before us shows that the amount of surplus accrued in the General Revenue Fund at the close of June 30, 2007, over and above the amount constitutionally required to be placed in the Constitutional Reserve Fund, exceeded the 135 Million Dollars of the surplus transferred from the General Revenue Fund in H.B.1105.[8] H.B.1105 directs the transfer of "surplus funds which accrue to the General Revenue Fund of the State of Oklahoma for the fiscal year ending June 30, 2007, over and above that which is placed in the Constitutional Reserve Fund." Based upon the record before us, H.B.1105 does not make appropriations from the Constitutional Reserve Fund contrary to art. X, § 23(4).
¶ 13 Born out of the State's mounting debt in 1941, art. X, § 23 restricts appropriations of estimated revenues, but it does not restrict appropriations of actual collected surplus monies. H.B.1105 deals with actual revenues that have not been included in the estimate and that have not been appropriated. Article X, § 23 authorizes the Legislature to transfer existing revenues and the unappropriated cash on hand from the General Revenue Fund into other funds in the State Treasury and to appropriate funds not previously appropriated. Article X, § 23(2) provides in part:
[T]he Legislature may at any regular session or special session, called for that purpose, enact laws to provide for additional revenues or a reduction in revenues, other than ad valorem taxes, or transferring the existing revenues or unappropriated cash on hand from one fund to another, or making provision for appropriating funds not previously appropriated directly by the Legislature. Whereupon, it shall be the duty of the State Board of Equalization to make a determination of the revenues that will accrue under such laws and ninety-five percent (95%) of the amount of any increase or decrease resulting, for any reason, from such changes in laws shall be added to or deducted from the amount previously certified available for appropriation from each respective fund, as the case may be. The State Board of Equalization shall file the amount of such adjusted certification, or additional certification for funds not previously appropriated directly by the *474 Legislature with the Governor, with the President and President Pro Tempore of the Senate, and the Speaker of the House of Representatives, and such adjusted amount shall be the maximum amount which can be appropriated for all purposes from any such fund for the fiscal year being certified.
(Bold added.)
Okla. Const., art. X, § 23(2).
¶ 14 Although art. X, § 23 does not speak specifically to the appropriation of surplus monies, Draper v. State Bd. of Equalization, 1966 OK 87, 414 P.2d 276, determined that the Legislature may appropriate current fiscal year surplus actually accrued in the General Revenue Fund and Wiseman v. Boren, 1976 OK 2, 545 P.2d 753, ruled that the surplus in the General Revenue Fund was available to the Legislature for immediate appropriation. In so ruling, Wiseman adhered to our established principles of constitutional law.
Even if our Constitution does not specifically authorize the immediate appropriation of the surplus funds by the 1976 Legislature, such funds are presently available unless our Constitution prohibits it. The Legislature exercises the sovereign will unless restrained by the Constitution[,] Draper v. State Board of Equalization, Okl., 414 P.2d 276 (1966), and we look to the Constitution to determine whether the Legislature is prohibited from doing an act rather than to see if it is authorized. If there is any doubt as to the Legislature's power to act in a given situation, the doubt should be resolved in favor of the validity of the action taken by the Legislature. Restrictions and limitations upon Legislative power are to be construed strictly, and are not to be extended to include matters not covered or implied by the language used. Tate v. Logan, supra. Any Legislative enactment (in this case the proposed appropriation of part or all of the 1975 surplus funds by the 1976 Legislature) will be presumed constitutional unless its unconstitutionality is shown beyond a reasonable doubt. Schmitt v. Hunt, Okl., 359 P.2d 198 (1961).
1976 OK 2 at ¶ 3, 545 P.2d at 760-761 (Supplemental Opinion on Rehearing).
¶ 15 Guided by these constitutional law principles, we conclude that art. X, § 23 does not prohibit the Legislature from appropriating the surplus accrued in the General Revenue Fund for the current fiscal year over and above the amount required to be placed in the Constitutional Reserve Fund, nor does it prohibit the Legislature from appropriating surplus that will accrue in the General Revenue Fund by the end of the current fiscal year even if the Legislature must finally adjourn sine die before the amount of the actual surplus can be determined. We further conclude that art. X, § 23(2) requires the State Board of Equalization to make an additional certification of the appropriated accrued surplus upon the enactment of a law appropriating the current fiscal year surplus in the General Revenue Fund and to file the certification with the Governor, President and President Pro Tempore of the Senate, and the Speaker of the House of Representatives. Additionally, art. X, § 23(1) requires the State Board of Equalization to adjust the limitation on appropriations for these accrued surplus funds when necessary.[9]

b. Article V, § 55
¶ 16 In this case, the State Finance Director and the State Treasurer contend that H.B.1105 transfers the surplus moneys from one fund to another in the State Treasury for expenditure without making an appropriation. As we read H.B.1105, it does more than merely transfer the surplus moneys from the General Revenue Fund to other funds in the State Treasury for future appropriation *475 to the designated agencies and purposes. Unambiguous language in H.B.1105 leaves no doubt that the Legislature authorized the Department of Corrections to "utilize the monies in the Private Prison and Halfway House Capacity Development Revolving Fund to make payments pursuant to contracts . . . in effect on July 1, 2007." 2007 Okla.Sess.Laws, ch. 204, § 3. This language clearly contemplates that the 5 Million Dollars transferred and allocated to the Private Prison and Halfway House Capacity Development Revolving Fund may be paid out of the State Treasury during the 2008 fiscal year.[10] Money can only be paid out of the State Treasury pursuant to a legislative appropriation act.
No money shall ever be paid out of the treasury of this State, nor any of its funds, nor any of the funds under its management, except in pursuance of an appropriation by law, nor unless such payments be made within two and one-half years after the passage of such appropriation act, and every such law making a new appropriation, or continuing or reviving an appropriation, shall distinctly specify the sum appropriated and the object to which it is to be applied, and it shall not be sufficient for such law to refer to any other law to fix such sum.
(Bold added.)
Okla. Const., art. V, § 55.
¶ 17 Even though drafted in terms of "transferring" and "allocating," H.B.1105 unmistakably appropriates nearly 135 Million Dollars from the General Revenue Fund. It is an appropriation bill, and it must satisfy the requirements of an appropriation law set out in art. V, §§ 55 and 56 of the Oklahoma Constitution.
¶ 18 As required by art. V, § 55, the provisions in H.B.1105 distinctly specify the amount appropriated to each agency or revolving fund. The provisions do not distinctly specify the object to which the money is to be applied for each and every specific amount appropriated to a revolving fund, but the object can be determined by reference to other statutes creating or relating to the revolving fund. For instance, the object to which money in the State Emergency Fund is to be applied can be determined by reference to the statutes governing the revolving fund such as 62 O.S.Supp.2006, § 139.47. Article V, § 55 provides that it is insufficient to refer to another law to determine the specific amount of the appropriation, but it does not extend the restriction against referring to another law to determine the object to which the appropriated amount shall be applied. The restriction against referring to another law to determine the amount appropriated will be strictly construed and will not be extended to other matters not covered by the restriction. Tate v. Logan, 1961 OK 136, ¶ 19, 362 P.2d 670, 674-675. Accordingly, H.B.1105 is consistent with the provisions to make an appropriation by law in art. V, § 55 even though reference to other statutes is necessary to determine the objects or purposes of some of the appropriations.

c. Article V, § 56
¶ 19 To be a valid appropriation law, the appropriation bill must also comply with the limitations in art. V, § 56 of the Oklahoma Constitution. Article V, § 56 reads:
The general appropriation bill shall embrace nothing but appropriations for the expenses of the executive, legislative, and judicial departments of the State, and for interest on the public debt. The salary of no officer or employee of the State, or any subdivision thereof, shall be increased in such bill, nor shall any appropriation be made therein for any such officer or employee, unless his employment and the amount of his salary, shall have been already provided by law. All other appropriations shall be made by separate bills, each embracing but one subject.
(Bold added.)
¶ 20 The above-quoted section restricts appropriation bills to two kinds. The *476 first is a general appropriation bill which "shall embrace nothing but appropriations." In other words, a general appropriation bill may only make appropriations to the exclusion of any substantive law provisions. Johnson v. Walters, 1991 OK 107, ¶¶ 20-21, 819 P.2d 694, 698. A general appropriation bill's object or purpose is appropriations for the expenses of state government, and it must provide for the expenses of the executive, the legislative, and the judicial departments and for interest on the public debt. H.B.1105 is not a general appropriation bill because it makes appropriations to some agencies in the executive department only and has substantive law provisions that are not appropriations.
¶ 21 The second kind of appropriation bill is a special appropriation bill which makes special appropriations to fund a particular aspect of state government. A special appropriation bill makes appropriations to fund only one agency or to support only one state governmental purpose. Campbell v. White, 1993 OK 89, ¶ 14, 856 P.2d 255, 260. Unlike a general appropriation bill, a special appropriation bill is not restricted to making appropriations only. If a special appropriation bill contains multiple provisions, all of the provisions must readily manifest a common, closely akin theme or purpose as opposed to a broad and expansive theme or purpose. Id. If the multiple provisions in a special appropriation bill include substantive law as well as the appropriation law, each and every provision must be closely related to a single subject. Because every appropriation bill must specify the object of the appropriation under art. V, § 55, the subject of a special appropriation bill is necessarily limited to the object to which the appropriated money is to be applied, and the object of the appropriation is limited by the one-subject requirement in art. V, § 56.[11]
¶ 22 The purpose of the one-subject requirement is to prevent "log rolling," the practice of including unpopular causes with popular causes on an entirely different subject in the same legislative measure. Campbell v. White at ¶ 7, 856 P.2d at 258. Petitioner argued that H.B.1105 violates the one-subject requirement and constitutes "log rolling" in that it makes multiple special appropriations to several different subjects or objects of state government. The State Treasurer responded that the one-subject rule is satisfied because all the provisions of H.B.1105 relate to common themes of allocating surplus funds and establishing and managing accounts. The gist of the State Treasurer's argument is that the subject of the legislation should be tested by the broad, expansive themes of "allocating surplus" or "managing accounts," rather than a narrow, strict theme such as the "Department of Corrections" or "higher education operating expenses."
¶ 23 Campbell v. White rejected the broad, expansive theme approach to the one-subject requirement. 1993 OK 89, at ¶ 8, 856 P.2d at 258. Campbell recognized that legislation satisfies the one-subject requirement in art. V, § 57 if the provisions are germane, relative, and cognate to one another, citing Black v. Oklahoma Funding Bd., 1943 OK 270, 193 Okla. 1, 140 P.2d 740, 743. Campbell affirmed the "unity-of-subject" germaneness test to determine if there is "unity-of-subject" in all provisions in the legislation challenged under the one-subject requirement in art. V, § 56. 1993 OK 89, at ¶ 12, 856 P.2d at 260. We reject the State Treasurer's argument for a broad, expansive theme approach to the one-subject requirement. We adhere to our prior cases holding germaneness to be the standard for determining violation of the one-subject requirement in art. V, §§ 56 and 57.[12]
¶ 24 Campbell v. White involved a challenge to an appropriation bill relating to cultural entities. The bill challenged in Campbell made an appropriation to Oklahoma Tourism and Recreation to provide state *477 matching funds to federal Bureau of Reclamation Fund Program funds, reappropriated funds for the development of an industrial airpark economic study, restricted the closing of state parks, and provided for the establishment of an intern program for the State Regents of Higher Education. Campbell ruled that the bill did not satisfy the germaneness test for the one-subject requirement. Here, H.B.1105 makes multiple appropriations for a variety of unrelated purposes or objects, and it can not withstand scrutiny under the germaneness standard in Campbell v. White.
¶ 25 The State of Oklahoma enjoyed a surplus during the 2007 fiscal year, and the Legislature chose to appropriate the surplus accruing in the General Revenue Fund for fiscal year 2007 over and above the required transfers to the Constitutional Reserve Fund. The appropriations had to be enacted before the actual amount of the surplus could be determined at the close of fiscal year on June 30, 2007. Faced with a unique challenge of prioritizing the appropriations to avoid deficit spending, the Legislature included appropriations to support several different and unrelated objects or purposes in a single bill contrary to the one-subject requirement. H.B.1105 violates the Okla. Const., art. V, § 56. Without considering the desirability, wisdom, or practicality of the appropriations in H.B.1105, Calvey v. Daxon, 2000 OK 17, ¶ 21, 997 P.2d 164, 171, we observe that the Legislature should have adopted a separate special appropriation bill for each unrelated object or purpose of state government funded in H.B.1105 to satisfy the one-subject requirement, and it could have included language in each special appropriation bill that fixes the priority of the appropriation to the actual surplus funds.

V. Extraordinary Relief from the Provisions of H.B.1105
¶ 26 Petitioner argued that the Legislature will continue its practice of "log rolling" unpopular appropriations with popular appropriations unless this Court issues an injunction or a writ of mandamus, citing Campbell v. White, 1993 OK 89, 856 P.2d 255, and Morgan v. Daxon, 2001 OK 104, 49 P.3d 687. Campbell gave prospective effect to its ruling that appropriations bills relating to specific governmental functions included unrelated provisions contrary to the one-subject requirement. Morgan stayed the effectiveness of its writ of prohibition against the release of funds under an appropriation bill adjusting state agency appropriations contrary to the one-subject requirement.
¶ 27 Extraordinary writs are issued and withheld in the sound discretion of the court even if a petitioner may have a clear legal right for which a writ of mandamus is an appropriate remedy. State ex rel. Nesbitt v. Ford, 1967 OK 186, 434 P.2d 934, Syllabus, No. 5. We have refused to issue a writ of mandamus if it will create confusion in connection with fiscal affairs, id. at ¶ 33, 434 P.2d at 940, in particular, confusion in the current budgets. City of Tulsa v. State, 2001 OK 23, ¶ 4, 20 P.3d 144, 147. This case presents such a situation.
¶ 28 In enacting H.B.1105, the Legislature was not dealing with the more familiar revenue shortfall, nor was it dealing with mounting indebtedness. It was dealing with an actual surplus in revenues, and unlike Campbell v. White, it faced a dilemmahow to appropriate the accrued surplus when required to adjourn sine die before the amount is fixed. The Legislature attempted to make the appropriations in a single special appropriation bill. As we previously recognized, the Legislature did not know the amount of the actual surplus that would in fact accrue at the close of fiscal year on June 30, 2007; so, faced with the constitutional time constraint for adjournment, it included the appropriations to support several different and unrelated objects or purposes in a single bill to prioritize the appropriations and avoid deficit spending.
¶ 29 We find the equities in this case do not justify the issuance of an injunction or a writ of mandamus in this proceeding. Rather, the equities in this case favor prospective application of this opinion to avoid confusion in the current state budgets. We withhold any extraordinary relief and give prospective application to this opinion. In so doing, we reiterate the caution in Campbell v. White:
Our consideration for the practical operations of government should not be understood *478 to be a shield for the continued enactment of unconstitutional laws. Although we are sympathetic with the time constraints the Legislature faces in session, this Court is bound to uphold the Constitutionwe are prepared to do so.
1993 OK 89, ¶ 20, 856 P.2d at 263.

VI. Conclusion
¶ 30 We conclude H.B.1105 makes appropriations to support several different and unrelated objects or purposes contrary to the one-subject requirement in the Okla. Const., art. V, § 56. Our ruling that H.B.1105 violates art. V, § 56 would create confusion in the state's fiscal affairs if applied to the current fiscal year. The equities require prospective application of this opinion to take effect on July 1, 2008. However, the Legislature should stand advised that the prospective effect given to this opinion should not be read as a signal that the one-subject requirement will not be judicially enforced. Rather, the Legislature is hereby notified that in future log-rolling challenges this Court will not hesitate to exercise its writ power. Prospective application renders petitioner's request for an accounting moot.
INJUNCTION OR WRIT OF MANDAMUS DENIED; PROSPECTIVE APPLICATION TO TAKE EFFECT ON JULY 1, 2008.
WINCHESTER, C.J., EDMONDSON, V.C.J., and HARGRAVE, OPALA, KAUGER, and TAYLOR, JJ., concur.
WATT, J., concurs specially.
COLBERT, J., concurs in result.
REIF, J., not participating.
WATT, J. concurring specially.
¶ 1 I agree with the majority that H.B. 1105 makes appropriations to support several different and unrelated objects or purposes contrary to the one subject requirement in the Okla. Const., art. V, § 56. I also agree that, on this one final occasion, the effect of our ruling should be given prospective effect to avoid disruption of those state agencies who received appropriations pursuant to the bill. Nevertheless, I concur specially for the express purpose of advising the Legislature that future attempts at logrolling,[1] no matter how late in the legislative session they appear, should not be met with a similar response from this Court.
¶ 2 Utilizing the mandatory term "shall,"[2] art. 5, § 56 of the Okla. Constitution provides for two kinds of appropriations bills: 1) a general appropriations bill which "shall embrace nothing but appropriations for the expenses of the executive, legislative, and judicial departments of the State;" and 2) all other appropriations which "shall be made by separate bills, each embracing but one subject." Here, it is unquestioned that the bill presented is not a general appropriations bill. Therefore, the Legislature was aware that its constitutionality hinged on it being a single subject bill. Nevertheless, it chose to draft a bill covering several subjects rather than to present a number of separate bills which would have withstood the single subject challenge.
¶ 3 The Legislature is well educated in the requirements of the single subject rule found in the Oklahoma Constitution, art. 5, § 56. In 1991, this Court gave prospective application to a violation of the single subject rule in Johnson v. Walters, 1991 OK 107, ¶ 31, 819 P.2d 694. Less than two years later, we did the same in Campbell v. White, 1993 OK 89, ¶ 20, 856 P.2d 255. In Campbell, the Legislature was advised that our restraint should not be tested a third time and that the Court was prepared to uphold the Constitution.
*479 ¶ 4 This is the third occasion in which this Court has found it necessary to give prospective application to a logrolling situation because the Legislature waited late enough in the session and appropriated or expended monies before the Court had the opportunity to hear and decide a challenge. Today, we again give prospective effect to our ruling to avoid needless disruption to the operation of state agencies. However, the Legislature has now had its "third strike."
¶ 5 Our consideration of practical operations of government should not be allowed to override this Court's duty to uphold the Constitution. The Legislature should stand advised that the prospective operation of this opinion should not be read as a signal that it may act late enough in its session and expend monies expeditiously enough to avoid our intervention to uphold our constitutional duties. Rather, the Legislature should stand notified that future logrolling challenges will be subject to the power of the writ and to an immediate accounting.
NOTES
[1] The Okla. Const., art. V, § 26 provides in part: "The Legislature shall meet in regular session at the seat of government at twelve o'clock noon on the first Monday in February in each year and the regular session shall be finally adjourned sine die not later than five o'clock on the last Friday in May of each year."
[2] The Okla. Const., art. X, § 1 provides: "The fiscal year shall commence on the first day of July in each year, unless otherwise provided by law."
[3] Fiscal year agency category and budget limits are provided in separate legislative bills which apportion the funds made available to a specific agency. For instance, the State Board of Education is required to budget specified amounts of appropriated funds in categories of 1) payroll, salaries or wages, 2) professional and personal services contracts, 3) purchase of equipment, 4) lease-purchase agreements, and 5) expenditure of federal funds. Section 2 of House Bill 1133, 2007 Okla.Sess.Laws, ch. 211, § 2.
[4] A revolving fund is an account in the State Treasury created by the Legislature for deposit of moneys received by a state agency or officer such as the revolving funds created in 62 O.S.2001, §§ 155-161. In creating a revolving fund, the Legislature specifies the moneys to be deposited therein, such as fees or appropriated moneys, the purposes for which the moneys may be expended, and the agency or officer in control of the revolving fund. Here, H.B.1105 does not identify, in every instance, the agency or officer in control of a specific revolving fund or the purposes for which the moneys may be expended. For instance, H.B.1105 does not reveal that the State Emergency Fund is controlled by the Governor, 62 O.S.2001, § 139.42, to provide for disaster relief and for other purposes identified at 62 O.S.2001, §§ 139.45-139.47, nor does it reveal that the Rural Fire Equipment Grant Revolving Fund is controlled by the Oklahoma Department of Agriculture, Food and Forestry. 2 O.S.Supp.2006, § 16-83.
[5] The Okla. Const., art. V, § 58 provides in part: "No act shall take effect until ninety days after the adjournment of the session at which it was passed, except enactments for carrying into effect provisions relating to the initiative and referendum, or a general appropriation bill, unless, in case of emergency, to be expressed in the act, the Legislature, by a vote of two-thirds of all members elected to each House, so directs."
[6] The Okla. Const., art. X, § 30, provides: "The Legislature shall require all money collected by taxation, or by fees, fines, and public charge of every kind, to be accounted for by a system of accounting that shall be uniform for each class of accounts, State and local, which shall be prescribed and audited by authority of the State."
[7] The estimate of revenues certified by the State Board of Equalization allows the Legislature as well as the citizens of this State to know how much money is available for appropriations for the next fiscal year. See Smith ex rel. State v. State Bd. Of Equalization, 1981 OK 57, 630 P.2d 1264.
[8] The record includes an affidavit of an employee in the Office of State Finance. The affidavit states that the surplus money collected during the 2007 fiscal year was properly deposited into the Constitutional Reserve Fund; when the amount in the Constitutional Reserve Fund reached the constitutional cap, the surplus money accruing thereafter remained in the General Revenue Fund; and the surplus money in the General Revenue Fund exceeded 150 Million Dollars at the close of fiscal year on June 30, 2007. Petitioner did not dispute this affidavit.
[9] The last paragraph in § 23(1) of art. X, Okla. Const., provides:

Legislative appropriations for any fiscal year, except for special appropriations provided for in paragraph 4, shall be limited to a sum not to exceed the total amount appropriated from all funds in the preceding fiscal year, plus twelve percent (12%), adjusted for inflation for the previous calendar year. Said limit shall be adjusted for funds not previously appropriated. The limit on the growth of appropriations shall be certified to by the State Board of Equalization.
[10] Today we rule H.B. 1105 violates the one-subject limitation in the Okla. Const., art. V, § 56 and give our ruling prospective application. Accordingly, on July 1, 2008, the provisions establishing the Private Prison and Halfway House Capacity Development Revolving Fund in H.B. 1105 will be null and void.
[11] When considering the constitutionality of an act of the legislature, all pertinent constitutional provisions must be considered together. Tate v. Logan, at ¶ 5, 362 P.2d at 672l.
[12] The Okla. Const., art. V, § 57 provides in part: "Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title, except general appropriation bills, general revenue bills, and bills adopting a code, digest, or revision of statutes. . . ."
[1] Logrolling is the practice of assuring the passage of a law by creating a situation in which a legislator or voter is forced to assent to an unfavorable provision to secure passage of a favorable one, or conversely, forced to vote against a favorable provision to ensure that an unfavorable provision is not enacted. In re Initiative Petition No. 382, 2006 OK 45, ¶ 8, 142 P.3d 400; Edmondson v. Pearce, 2004 OK 23, ¶ 43, 91 P.3d 605, cert. denied, 543 U.S. 987, 125 S.Ct. 495, 160 L.Ed.2d 371 (2004); In re Initiative Petition No. 360, 1994 OK 97, ¶¶ 17-18, 879 P.2d 810.
[2] Generally, the use of "shall" signifies a command. Zeier v. Zimmer, Inc., 2006 OK 98, ¶ 7, 152 P.3d 861; Cox v. State ex rel. Oklahoma Dept. of Human Services, 2004 OK 17, ¶ 21, 87 P.3d 607; United States through Farmers Home Admin. v. Hobbs, 1996 OK 77, ¶ 7, 921 P.2d 338.