OSCN Found Document:Question Submitted by: The Honorable Scott M. Inman, State Representative, District 94

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 Question Submitted by: The Honorable Scott M. Inman, State Representative, District 94
2014 OK AG 7
Decided: 06/18/2014
Oklahoma Attorney General Opinions
Cite as: 2014 OK AG 7, __ __

 
¶0 This office has received your request for an Attorney General Opinion in which you ask, in effect, the following question:
Section 144 of Senate Bill 2127--the general appropriations bill for the coming fiscal year--purports to direct the State Board of Equalization to (1) increase by approximately $7.9 million the amount it certified for appropriation, and (2) correspondingly reduce by approximately $7.9 million the amount that the Board set aside for transfer to Oklahoma's Higher Learning Access Trust Fund. Is Section 144 lawful?
I.
Introduction
¶1 In 1992, the Oklahoma Legislature passed the "Oklahoma Higher Learning Access Act," which created a college scholarship program called "Oklahoma's Promise." 70 O.S.2011 & Supp.2013, §§ 2601 - 2605. Oklahoma's Promise provides college tuition assistance to Oklahoma students who might otherwise not be able to afford to attend college. Subject to the availability of funds, the program guarantees that those students who meet the eligibility criteria will be awarded tuition assistance. Id. In the decade plus since its creation, the program has awarded tuition assistance to thousands of Oklahoma students, allowing those students to achieve their dream of receiving a college education. To date, the program has never had to turn down a qualifying student due to lack of funding. 
¶2 The tuition assistance paid by Oklahoma's Promise comes from the Oklahoma Higher Learning Access Trust Fund ("Trust Fund"). 70 O.S.Supp.2013, § 3953.1. Since 2007, funding for the Trust Fund has been governed by 62 O.S.Supp.2013, § 34.87, which creates a three-step process for funding Oklahoma's Promise. 
¶3 First, no later than November 1 of each year, the State Regents for Higher Education are required to estimate the amount of revenue they deem necessary to fund the scholarship awards for the fiscal year beginning the following July 1, and then provide this estimate to the State Board of Equalization. Id. § 34.87(1).
¶4 Second, at its December meeting, the State Board of Equalization "shall determine the total amount of revenue necessary to fund awards . . . for the fiscal year which begins the following July 1 and subtract such amount from the amount it certifies as available for appropriation from the General Revenue Fund by the Legislature for such fiscal year[.]" Id. § 34.87(2). 
¶5 Third, "[n]otwithstanding any other provisions of law directing the apportionment of revenues . . . the Director of the Office of Management and Enterprise Services shall transfer on a periodic basis as needed the amount of revenue subtracted pursuant to the provisions of paragraph 2 of this section to be deposited to the Oklahoma Higher Learning Access Trust Fund, in lieu of being deposited to the General Revenue Fund." Id. § 34.87(3). 
¶6 On October 23, 2013, the State Regents fulfilled their obligation under 62 O.S.Supp.2013, § 34.87(1) to provide the State Board of Equalization with an estimate of the amounts necessary to fund Oklahoma's Promise for fiscal year 2015. In a letter to Governor Mary Fallin, in her capacity as Chair of the State Board of Equalization, Chancellor Glen Johnson estimated that the program needed $61 million to fund the estimated 18,300 eligible students.[1] The State Regents recommended that $57 million be allocated to the Trust Fund, with the remaining $4 million to be funded from Trust Fund reserves. Id. n.1.
¶7 On December 19, 2013, the State Board of Equalization fulfilled its obligation under 62 O.S.Supp.2013, § 34.87(2) to determine the amount necessary to fund Oklahoma's Promise, concluding that the full $57 million requested by the State Regents should be set aside for transfer into the Trust Fund. Minutes from the State Bd. of Equalization (Dec. 19, 2013) (on file with author). The State Board of Equalization thus subtracted that $57 million from the amount it certified to the Legislature as being available in the General Revenue Fund for appropriation. 
¶8 On May 23, 2014, the Legislature approved S.B. 2127, the general appropriations bill for fiscal year 2015. Section 144 of S.B. 2127 states as follows:


The State Board of Equalization shall reduce the amount subtracted from the monies being deposited to the General Revenue Fund, as certified by the Board February 18, 2014, pursuant to provisions of paragraph 2 of Section 34.87 of Title 62 of the Oklahoma Statutes for fiscal year 2015 by Seven Million Eight Hundred Ninety-four Thousand Seven Hundred Thirty-seven Dollars ($7,894,737.00), requiring that the Oklahoma Higher Learning Access Trust Fund be used for any additional monies needed to fund the Oklahoma Higher Learning Access Program for fiscal year 2015. 


2014 Okla. Sess. Laws ch. 420, § 144.
¶9 Section 144 thus purports to require the State Board of Equalization to increase the amount certified by the State Board of Equalization as available for general appropriation by $7,894,737, and in turn, correspondingly reduce the amount set aside for transfer to the Trust Fund by $7,894,737. 
¶10 In effect, the Legislature has attempted to siphon $7,894,737 away from Oklahoma's Promise so that it can be spent elsewhere. You ask whether the Legislature's attempt to do so is lawful. We conclude that it is not.
II.
Section 144 Violates Article V, Sections 56 And 57 Because it is a Substantive Law Provision That Alters the State Board of Equalization's Constitutional and Statutory Certification Obligations, as Well as the Director of the Office of Management and Enterprise Services' Obligation Under 62 O.S.Supp.2013, § 34.87 to Transfer into the Trust Fund the Full Amount of Funds Certified by the Board of Equalization at its December Meeting.
¶11 Section 144 of S.B. 2127 purports to alter two substantive legal obligations. First, it alters the State Board of Equalization's obligation under Article X, Section 23 to certify the amount available for appropriation. Second, it alters the State Board of Equalization's obligation under 62 O.S.Supp.2013, § 34.87(2) to determine the amount needed to fund Oklahoma's Promise for the coming year. Section 144 also has the downstream effect of altering the Director of the Office of Management and Enterprise Services' substantive obligation under 62 O.S.Supp.2013, § 34.87(3) to "notwithstanding any other provision of law directing the apportionment of revenues" transfer to the Trust Fund the full amount certified by the State Board of Equalization at its December meeting. 
¶12 S.B. 2127 is, however, a general appropriations bill. See 2014 Okla. Sess. Laws ch. 420 (where the title of the Act describes it as "An Act relating to general appropriations for the expenses of various agencies of the executive, legislative and judicial departments of the state[.]). As such, Article V, Section 56 of the Oklahoma Constitution requires that it contain only appropriative provisions. Id.; see also Fent v. State ex rel. Office of State Fin., 184 P.3d 467, 476 (Okla. 2008) ("[A] general appropriation bill may only make appropriations to the exclusion of any substantive law provisions."). For purposes of Article V, Section 56, an appropriation is "the designation or authorization of the expenditure of public moneys and stipulation of the amount, manner and purpose for a distinct use or for the payment of a particular demand." Smith ex rel. State v. State Bd. of Equalization, 630 P.2d 1264, 1266 (Okla. 1981). Section 144 does not effectuate an appropriation because it is not the designation of a specific amount of money for a distinct use.[2] Rather, Section 144 is a direction to the State Board of Equalization to alter substantive obligations imposed on the Board by Article X, Section 23 and 62 O.S.Supp.2013, § 34.87.[3] This attempt to change those substantive obligations of the State Board of Equalization--and in turn the substantive obligation of the Director of the Office of Management and Enterprise Services to transfer the amount of funds initially certified by the Board of Equalization--is invalid because it is a substantive provision of law in a general appropriations bill.[4] 
¶13 And even if S.B. 2127 is considered a special appropriations bill because it contains a mixture of substantive and appropriative provisions, it is unconstitutional because it fails to comply with Article V, Section 57's single subject requirement. Fent, 184 P.3d at 476 ("If the multiple provisions in a special appropriation bill include substantive law as well as the appropriation law, each and every provision must be closely related to a single subject."). 
¶14 The test under the single subject rule is "germaneness," a test that looks to see if the provisions in the bill all relate to a common theme or purpose. Id. Senate Bill 2127 plainly fails that test, as it contains a host of appropriations and transfers to various agencies for various purposes, and the Oklahoma Supreme Court has previously rejected the notion that such wide-ranging appropriations can be considered germane to a broad theme like "allocating revenues." Fent, 184 P.3d at 476.[5]
III.
The Legislature Lacks the Authority to Direct the State Board of Equalization How to Carry Out its Constitutional Duty to Certify the Amount of Funds Available to the Legislature for Appropriation.
¶15 Section 144 of S.B. 2127 purports to require the State Board of Equalization to do two things. First, the State Board of Equalization must increase by nearly $7.9 million the amount that it at its December meeting determined--pursuant to its constitutional obligation under Article X, Section 23 to do so--was available for the Legislature to appropriate to fund government operations for the coming year. Second, the State Board of Equalization must reduce by nearly $7.9 million the amount that it at its December meeting determined--pursuant to its statutory obligation under 62 O.S.Supp.2013, § 34.87(2) to do so--was needed to fund Oklahoma's Promise for the coming year. 
¶16 Article X, Section 23 imposes upon the State Board of Equalization the duty to determine, prior to the start of each regular session of the Legislature, how much money will be available in the General Revenue Fund for appropriation by the Legislature. While the Legislature is bound by the certification of revenues made by the State Board of Equalization, Article X, Section 23(2) allows the Legislature to "enact laws to provide for additional revenues or a reduction in revenues," in which case the State Board of Equalization must "make a determination of the revenues that will accrue under such laws." Id. In other words, the State Board of Equalization has a constitutional duty to meet after the end of the legislative session to determine if it needs to amend the amount it has certified as available for appropriation due based on any changes in the law that will affect general revenues expected in the coming fiscal year.
¶17 Here, the Legislature has attempted to do more than simply pass a law that "provides for additional revenue or for a reduction in revenues." Id. To the contrary, Section 144 does nothing to increase or decrease revenues to be received by the State in the coming year. Rather, it simply directs the State Board of Equalization to increase the amount it has certified, and by a specific amount. Article X, Section 23 does not give the Legislature the authority to determine how much should be certified as available for it to appropriate. Only the State Board of Equalization has that authority, and the Constitution vests that authority solely with the State Board of Equalization precisely to prevent the Legislature from attempting to determine how much should be available to it for appropriation. Article X, Section 23 creates a structural separation of powers between the State Board of Equalization and the Legislature. With Section 144 of S.B. 2127, the Legislature has infringed upon the State Board of Equalization's constitutional authority to determine the amount available for appropriation. Thus, the Legislature is without authority to direct the State Board of Equalization in this manner.
IV.
Conclusion
¶18 Given the invalidity of Section 144, 62 O.S.Supp.2013, § 34.87 remains the provision of law governing the obligations of the State Board of Equalization and the Director of the Office of Management and Enterprise Services with regard to the funding of the Oklahoma Higher Learning Access Trust Fund. As such, the State Board of Equalization must decline to reduce the amount it has set aside in December for transfer to the Trust Fund, and the Director of the Office of Management and Enterprise Services must comply with his statutory duty under 62 O.S.Supp.2013, § 34.87(3) to transfer to the Trust Fund the full $57 million set aside for that purpose by the Board at its December meeting.


¶19 It is, therefore, the official Opinion of the Attorney General that:
1. Because S.B. 2127 is a general appropriations bill, it can contain only appropriations, and cannot contain any substantive law. Fent v. State ex rel. Office of State Fin., 184 P.3d 467, 476 (Okla. 2008). Section 144 is substantive law. Section 144 thus violates Article V, Section 56 of the Oklahoma Constitution.
2. Even if S.B. 2127 is considered a special appropriations bill (i.e., a bill that contains a mixture of appropriative and substantive law provisions), Section 144 is still unconstitutional, because special appropriations bills must comply with the single-subject rule of Article V, Section 57 of the Oklahoma Constitution and S.B. 2127 plainly addresses multiple non-germane subjects.
3. Pursuant to Article X, Section 23 of the Oklahoma Constitution, the Legislature lacks the authority to direct the State Board of Equalization how to calculate the amount to be certified as available for appropriation.


4. Given the invalidity of Section 144, 62 O.S.Supp.2013, § 34.87 remains the provision of law governing the obligations of the State Board of Equalization and the Director of the Office of Management and Enterprise Services with regard to the funding of the Oklahoma Higher Learning Access Trust Fund.
E. SCOTT PRUITT
Attorney General of Oklahoma
PATRICK R. WYRICK
Solicitor General
Oklahoma Office of The Attorney General 
FOOTNOTES
[1] Letter from Glen D. Johnson, Chancellor, Okla. State Regents for Higher Educ. to Mary Fallin, Governor of Oklahoma (Oct. 23, 2013) attached to Minutes from the State Bd. of Equalization (Dec. 19, 2013) (on file with author). 
[2] Nor can Section 144 be considered a mere transfer of funds the likes of which are sometimes found in general appropriations bills. See, e.g., Sections 145-171 of S.B. 2127 (requiring the Director of Office of Management and Enterprise Services to transfer money between various funds, and labeling these provisions as "transfers" in both the act's title and in the heading to each provision). Transfers of that sort involve legislative direction to the Director of the Office of Management and Enterprise Services to move cash on hand between accounts, and thus have no effect on the State Board of Equalization's obligation to certify the amount of revenues expected to be realized in the coming fiscal year. Additionally, Section 144 is more than a mere transfer because it requires a constitutionally created board to vote to take an official action altering actions taken by that board pursuant to statutory and constitutional mandates. In any event, any argument that Section 144 was a mere transfer would be squarely foreclosed by the fact that even the Legislature did not view Section 144 as a transfer, as it neither labeled it as such, nor described it as such in the title of S.B. 2127.
[3] Article X, Section 23 provides in relevant part:
To ensure a balanced annual budget, pursuant to the limitations contained in the foregoing, procedures are herewith established as follows:
1. Not more than forty-five (45) days or less than thirty-five (35) days prior to the convening of each regular session of the Legislature, the State Board of Equalization shall certify the total amount of revenue which accrued during the last preceding fiscal year to the General Revenue Fund and to each Special Revenue Fund appropriated directly by the Legislature, and shall further certify amounts available for appropriation which shall be based on a determination, in accordance with the procedure hereinafter provided, of the revenues to be received by the state under the laws in effect at the time such determination is made, for the next ensuing fiscal year, showing separately the revenues to accrue to the credit of each such fund of the state appropriated directly by the Legislature.
. . . .
2. Such certification shall be filed with the Governor, the President and President Pro Tempore of the Senate, and the Speaker of the House of Representatives. The Legislature shall not pass or enact any bill, act or measure making an appropriation of money for any purpose until such certification is made and filed, unless the State Board of Equalization has failed to file said certification at the time of convening of said Legislature. In such event, it shall be the duty of the Legislature to make such certification pursuant to the provisions of this section. All appropriations made in excess of such certification shall be null and void; provided, however, that the Legislature may at any regular session or special session, called for that purpose, enact laws to provide for additional revenues or a reduction in revenues, other than ad valorem taxes, or transferring the existing revenues or unappropriated cash on hand from one fund to another, or making provisions for appropriating funds not previously appropriated directly by the Legislature. Whereupon, it shall be the duty of the State Board of Equalization to make a determination of the revenues that will accrue under such laws and ninety-five percent (95%) of the amount of any increase or decrease resulting, for any reason, from such changes in laws shall be added to or deducted from the amount previously certified available for appropriation from each respective fund, as the case may be. The State Board of Equalization shall file the amount of such adjusted certification, or additional certification for funds not previously appropriated directly by the Legislature, with the Governor, with the President and President Pro Tempore of the Senate, and the Speaker of the House of Representatives, and such adjusted amount shall be the maximum amount which can be appropriated for all purposes from any such fund for the fiscal year being certified.
Id.
[4] Another way to look at it is this: are the provisions in Article X, Section 23 and 62 O.S.Supp.2013, § 34.87 that impose the underlying obligations on the State Board of Equalization substantive law provisions? As codified provisions of law imposing ongoing substantive obligations, of course they are. With that so, Section 144, which purports to alter those underlying obligations cannot plausibly be characterized as anything other than a substantive provision.
[5] Section 144 might well be constitutionally infirm for two additional reasons. First, the legal process established by 62 O.S.Supp.2013, § 34.87 for the certification and transfer of funds to the Trust Fund likely constitutes a "proceeding" for purposes of Article V, Section 54, which prevents the Legislature from substantively altering that proceeding once it has been initiated. Second, Section 144's diversion of Trust Funds away from their intended purpose likely violates the principle announced in Moran v. State ex rel. Derryberry, 534 P.2d 1282, 1288 (Okla. 1975), that Article II, Section 15 prevents the Legislature from diverting trust funds to which trust beneficiaries have a vested right. Id.; see Tulsa Stockyards, Inc. v. Clark, 321 P.3d 185, 192 (Okla. 2014) ("A 'vested right' is the power to do certain actions or possess certain things lawfully, and is substantially a property right, and may be created either by common law, by statute, or by contract. And when it has once been created, and has become absolute, it is protected from the invasion of the Legislature by those provisions in the Constitution which apply to such rights.") (quoting Moran, 34 P.2d at 1288).




 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 2008 OK 2, 184 P.3d 467, FENT v. STATE ex rel. OFFICE OF STATE FINANCE
Discussed
 1975 OK 69, 534 P.2d 1282, MORAN v. STATE EX REL. DERRYBERRY
Cited
 1981 OK 57, 630 P.2d 1264, Smith ex rel. State v. State Bd. of Equalization
Cited
Title 62. Public Finance
 Cite
Name
Level

 62 O.S. 34.87, Procedure to Ensure Full Funding of Oklahoma Higher Learning Access Program
Discussed at Length
Title 70. Schools
 Cite
Name
Level

 70 O.S. 2601, Short Title
Cited
 70 O.S. 3953.1, Creation of Oklahoma Higher Learning Access Trust Fund
Cited